MORRELL v. GEO. BROOKS & SON CO.

(Circuit Court, D. Delaware. October 21, 1908.)

No. 289.

INJUNCTION (§ 69*)—CORPORATIONS—ILLEGAL ACTS OF DIRECTORS.

A Circuit Court of the United States, other requisites to the exercise of jurisdiction being satisfied, will enjoin de facto equally with de jure officers of a corporation from perpetrating, facilitating or permitting violations of law to the detriment of innocent stockholders who have no adequate remedy at law and are unable to induce the corporation to adopt effective measures for their protection.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 136; Dec. Dig. § 69.*]

(Syllabus by the Court.)

In Equity.

C. L. Ward and Herbert H. Ward, for complainant.
Willard Saulsbury and Charles M. Curtis, for defendant.

BRADFORD, District Judge. This is an application by Richard B. Morrell on bill and affidavits for a preliminary injunction against Geo. Brooks & Son Company. The defendant is a corporation of Delaware, created and organized in October, 1901, under the general incorporation act of March 10, 1899 (Laws 1899, p. 445, c. 273), with a total authorized capital stock of $300,000, consisting of $200,000 of common stock, divided into shares of $100 each, and $100,000 of preferred stock, also divided into shares of $100 each. The original incorporators were the complainant, Henry Brooks, now deceased, and William M. Pyle. The whole amount of the authorized stock, both common and preferred, has been issued and is outstanding. The common stock is held and owned as follows: The complainant 997 shares, Pyle 3 shares, the estate of Henry Brooks, deceased, 985 shares, and George H. Brooks, John W. H. Brooks and Marshall A. Brooks 5 shares each. Of the preferred stock the estate of Henry Brooks, deceased, owns and holds 995 shares, and John B. Wurtz the remaining 5 shares. The complainant is thus the owner of more than one-third of the total common stock, and he and Pyle together own just one-half of it; the other half being owned by persons antagonistic to the complainant. Section 137 of the general incorporation act (page 502) provides, among other things, as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Every corporation shall have power to create two or more kinds of stock of such classes, with such designations, preferences and voting powers, or restriction or qualification thereof, as shall be stated and expressed in the certificate of incorporation."

Pursuant to and in accordance with this authority article 4 of the certificate, after providing for common and preferred stock, declares:

"The holders of said preferred stock shall not be entitled, by reason of their holdings thereof, to any voice or vote in the management or affairs of the corporation. The voting power shall be confined to the holders of the common or general stock."

Article 8 provides, among other things, as follows:

"With the consent in writing and pursuant to a vote of the holders of 66⅔ per cent. of the capital stock issued and outstanding, the stockholders shall have authority to dispose, in any manner, of the whole property of this corporation."

It appears that April 10, 1908, the holders of two-thirds of the $300,000 of the stock, common and preferred, although not holding two-thirds of the common capital stock issued and outstanding, united in a formal request addressed to the complainant as president of the defendant, for the calling of a special meeting of the stockholders—

"for the purpose of electing directors, voting upon the question of selling the assets to George Brooks & Son, Incorporated, and transacting such other business as may be brought to the attention of the meeting."

This request was based in part on the consent in writing on the same day of the several persons uniting in such request. The body of the written consent was as follows:

"The undersigned, holders of 66⅔ per cent. of the capital stock issued and outstanding of the George Brooks & Son Company, hereby consent in writing to dispose of and sell the whole property of said company to another corporation, named George Brooks & Son, Incorporated, upon the following terms: The new corporation, which has a capital stock of $350,000, composed of $150,-000 of preferred stock and $200,000 of common stock, is to give to the holders of preferred and common stock share for share of like par value for their present holdings. It is also to give to the holders of the preferred stock, new preferred stock aggregating $26,000 for the arrearages of dividends due on the present preferred stock. The $24,000 of additional preferred stock is to be treasury stock to be used for corporate purposes as ordered by the stockholders and directors of the new company."

The complainant did not join in the written request above referred to, nor did he as president or in any other capacity call or cause to be called a special meeting of stockholders for the purpose of "voting upon the question of selling the assets to George Brooks & Son, Incorporated"; but pursuant to call a special meeting of stockholders was held May 11, 1908, for the purpose of electing directors of the defendant. At that meeting, against the protest of the complainant or his attorney, the $100,000 of preferred stock, together with $100,000 of the common stock, was voted for three proposed directors who were declared elected. Thereafter and on the same day the persons so declared elected took forcible possession of the business office, safe and books of the defendant and physically ejected from the office the person who up to that time had been and was recognized as treasurer of the defendant. Thereafter, May 16, 1908, Marshall A. Brooks, the

secretary or assuming to act as the secretary of the defendant, issued a call for a special meeting of stockholders to be held May 28, 1908, for "the purpose of voting on the question of selling all of the property of Geo. Brooks & Son Company to Geo. Brooks & Son, Incorporated," furnishing a certified list of stockholders, including those holding preferred as well as those holding common stock, and sending May 21, 1908, such certified list to the attorney of the complainant in a letter, saying:

"Enclosed please find a certified list of the stockholders entitled to vote at the stockholders' meeting of the Geo. Brooks & Son Co. to be held May 28, 1908."

Under these circumstances the complainant filed his bill May 26, 1908, praying, among other things, that the defendant, its officers and agents, or other persons controlling it, be restrained and enjoined as follows:

"From accepting, considering or counting any ballots or votes of the holders of the preferred shares of the capital stock of said corporation based upon said preferred shares or the ownership thereof, at any meeting of the stockholders, regular or special, of said defendant corporation, upon any question, and more particularly upon any question involving the voting or consent of the holders of said preferred shares for or against the sale of the assets or property of said defendant corporation to any other person or corporation, and from in any manner selling or disposing of the assets or property of said corporation to any other person or corporation without the consent in writing and the vote of 66⅔ per centum of the common capital stock of the said corporation issued and outstanding, until the further order of the court."

The argument at the hearing took a wide range, covering many points unnecessary seriously to discuss. If the holders of preferred capital stock of the defendant are not, as such, entitled to vote on the question of transferring all its assets to another company, the complainant has made a case entitling him to equitable relief under the injunctive power. For I am satisfied that the complainant has no adequate remedy at law. This court will not undertake, solely by reason of illegality in their choice, to oust or enjoin de facto officers of the defendant. But it will enjoin de facto equally with de jure officers of a corporation from perpetrating, facilitating or permitting violations of law to the detriment of innocent stockholders who have no adequate remedy at law and are unable to induce the corporation to adopt effective measures for their protection. The writ of quo warranto cannot avail in such a case; for it is wholly inapplicable. The principal point to be decided is whether preferred stockholders of the defendant have the right to vote on the question of transferring its assets to another company. I am satisfied that they do not have such right. Article 8 of the certificate of incorporation, it is true, provides that with the written consent and pursuant to the vote of the holders of two-thirds of "the capital stock issued and outstanding" all the property of the defendant may be disposed of; and, undoubtedly, were there nothing in the certificate to negative the existence of such right on the part of preferred stockholders, it would be necessary to hold that "the capital stock issued and outstanding" includes preferred as well as common shares. But article 8 must be read in the light of other provisions of the certificate. Article 4 not only provides, by way of negation, that preferred stockholders shall not, as such, have "any

voice or vote in the management or affairs of the corporation," but declares, by way of affirmation, that "the voting power shall be confined to the holders of the common or general stock." To overcome the force of the restriction contained in article 4 it would be necessary that article 8 should expressly provide for the consent and vote of the holders of two-thirds of the capital stock, "preferred and common," issued and outstanding. But the latter article contains no designation of preferred stock. Under the circumstances the words "capital stock issued and outstanding" must be read "common capital stock issued and outstanding," or "capital stock, entitled to a vote, issued and outstanding." So read, article 8 is in harmony with article 4. Such a reading does no violence to the language of article 8, for the words "capital stock issued and outstanding" are in and by themselves capable of application to common stock, or to preferred stock, or to common and preferred stock together. If, however, the words "capital stock" in article 8 be read "capital stock, preferred and common," a gross repugnancy is introduced in the certificate of incorporation; for such a reading would be wholly irreconcilable with the provision in article 4 that "the voting power shall be confined to the holders of the common or general stock." It is contended that the clause of article 8 now under consideration applies to a special subject of an important and exceptional nature, and that the stockholders' vote therein provided for was intended by the incorporators to be excepted from the generality of the prohibition in article 4. On the hypothesis of the existence of such an intention it would have been highly probable either that article 4 would have contained some such saving clause as "except as hereinafter provided to the contrary," or that article 8 would have expressly referred to preferred and common stock. In the absence of such saving or reference the only basis for the contention is groundless surmise. Indeed, in the nature of the case, and aside from the particular provisions which have been quoted, there is an inherent improbability that the incorporators entertained any such intention. Article 4 provides:

"The holders of preferred stock shall, in case of liquidation or dissolution of the company, be entitled to be paid in full, both the principal of their shares and the accrued dividends charged before any amount shall be paid to the holders of the general or common stock."

Article 8, as hereinbefore stated, provides that the stockholders, with the written consent and pursuant to the vote of the holders of the requisite proportion of the capital stock, shall have authority "to dispose in any manner of the whole property of this corporation." The legitimate construction of the clause cannot vary with the varying manner in which the property may be disposed of. Such construction must be uniform whether the stockholders proceed to dispose of all the assets for the purpose of acquiring stock in another company, or for money to be distributed among the creditors and stockholders of the defendant in the course of liquidation. In order to test the question of the proper construction of the clause let it be assumed that the stockholders propose to sell all the assets and distribute the proceeds. In that event, after the payment of debts and expenses, the holders of preferred stock

are entitled, before payment can be made on account of the common stock, to be "paid in full both the principal of their shares and the accrued dividends." Hence, the pecuniary interest of the preferred stockholders would be fully satisfied by a sale of the assets for enough money to pay debts, expenses and the capital and accrued dividends of their stock, although not a dollar should be left to apply to the common stock. On the other hand, in the absence of fraud and collusion, which are not to be presumed, between the common stockholders and a portion of the preferred stockholders, the conservation and protection of the pecuniary interest of the former require that a sale of the assets should be at a price more than sufficient to pay debts, expenses and the capital and accrued dividends of the preferred stock. The above considerations furnish a cogent reason why the incorporators should vest in the common stockholders alone the power to dispose of all the assets of the defendant by way of sale. And if they alone have power to sell all the assets, uniformity of construction requires that they alone have authority to dispose of the same in any other manner. Further, aside from the provision quoted from article 8, there is nothing in the certificate of incorporation to lend the slightest color to the contention that the voting power for any purpose is vested in preferred stockholders as such. That provision is limited to cases in which it is proposed "to dispose in any manner of the whole property" of the defendant. It has no application to the disposal of only a part of the assets in the conduct of the business or otherwise. The power of such partial disposal beyond all controversy resides either mediately or immediately in the common stockholders exclusively. No canon of construction justifies such a reading of the indefinite language of article 8 as to authorize preferred stockholders by their action in conjunction with that of the common stockholders to dispose of the whole property of the defendant, and to prohibit the preferred stockholders from consenting and voting, with the common stockholders, to dispose of one-half or nine-tenths of the total assets. The by-laws of the defendant also afford evidence of an intention and understanding on the part of the original incorporators that all voting power should be and was confined to the common stockholders. Article III provides, among other things, as follows:

"The one hundred thousand of preferred stock shall have no vote in the transaction of any business of the company, being a first lien on all the property, and in case of liquidation shall be redeemed at par. * * * The two hundred thousand common stock shall have and possess all voting power; shall meet and elect board of directors once a year, alter and amend by-laws, and, in fact, exercise all the power of stockholders as hereinafter provided."

On the whole I am clearly of opinion that the preferred stockholders, as such, have no authority to vote for a sale or other disposition of the whole or any part of the assets of the defendant, or on any question affecting its business or affairs, and that the complainant is entitled to a preliminary injunction in accordance with the hereinabove quoted portion of his prayer in that behalf. An interlocutory decree for the complainant may be prepared and submitted.