[Civ. No. 21971.   First Dist., Div. One.   Mar. 25, 1966.]

FRANCES M. BUSS, as Executrix, etc., et al., Plaintiffs and Appellants, v. J. O. MARTIN CO., INC., et al., Defendants and Respondents.

Alfred Nelson for Plaintiffs and Appellants.

Bronson, Bronson & McKinnen and Thomas B. Swartz for Defendants and Respondents.

SULLIVAN, P. J.—Plaintiffs Frances M. Buss as Executrix of the Last Will and Testament of Richard C. Buss, deceased[1] and C. U. Martin by and through John O. Martin, his attorney in fact, appeal from an adverse judgment entered on an order sustaining defendants' demurrer to plaintiffs' first amended complaint without leave to amend.[2]

---

[1] Substituted as plaintiff and appellant in the place and stead of Richard C. Buss who died after the appeal was taken.

[2] The first amended complaint contained five separately stated causes of action. The above judgment was entered on October 25, 1963, only as to the first cause of action. On the same day the court entered its order dismissing *without prejudice* the second, third, fourth and fifth causes of action for lack of jurisdiction of the subject matter of the action, the court stating that these causes of action fell upon the sustaining of the demurrer to the first cause of action because of the amounts in controversy. Plaintiffs also appealed from the last mentioned order. It is obvious that if the court erred in dismissing the first cause of action it also erred in dismissing the remaining causes.

The present action is brought under sections 4650 to 4661 of the Corporations Code.[3] The first amended complaint (hereafter for convenience called "complaint") alleges in substance as follows: That defendant J. O. Martin Co., Inc. (Corporation) is a California corporation with its principal place of business in San Francisco; that Richard C. Buss (Buss) and C. U. Martin are now, and for more than five years next preceding the filing of the complaint have been, the record holders and owners of more than 33⅓ percent of the outstanding shares of said corporation; that defendant Charles M. Martin (Charles) is, and at all times mentioned was, the holder of more than 50 percent of the outstanding shares of the Corporation; and that the Corporation is not subject to the Bank Act, Public Utilities Act or Building and Loan Association Act referred to in section 4650.

It is further alleged in what plaintiffs call "charging allegations" that over many decades plaintiff C. U. Martin built up and maintained a competent and highly efficient personnel and organization for the corporation;[4] that Charles has discharged

---

[3]Hereafter unless otherwise indicated all section references are to the Corporations Code.

Section 4650 provides in pertinent part: "A complaint for involuntary winding up or dissolution of a corporation other than one subject to the Bank Act, the Public Utilities Act, the Building and Loan Association Act, or Article 14 (commencing with Section 1010) of Chapter 1 of Part 2 of Division 1 of the Insurance Code may be filed in the superior court of the county in which the principal office is located by the persons described in any of the following subdivisions: . . . (b) A shareholder or shareholders who have been record holders for a period of not less than six months and who hold not less than 33⅓ percent of the number of outstanding shares. . . ."

Section 4651 provides in pertinent part: "The court, upon filing of a verified complaint, may entertain proceedings for the involuntary winding up or dissolution of such a corporation, when it is shown that any one or more of the following reasons exist: . . . (d) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders. (e) The directors or those in control of the corporation have been guilty of persistent fraud, mismanagement, or abuse of authority, or persistent unfairness toward minority shareholders, or its property is being misapplied, wasted, or lost by its directors or officers. (f) The liquidation is reasonably necessary for the protection of the rights or interests of any substantial number of the shareholders, or of the complaining shareholders."

[4]These allegations are: "That over a period of many decades, said C. U. MARTIN had built up and maintained a competent, highly efficient personnel and organization for said corporation and as a result of business practices and efficiency directed by said C. U. MARTIN, said corporation had acquired agency rights to sell, at great advantage and annual profit to said corporation, the products of many large manufacturing companies, and had thereby acquired the good will and business of a large number of firms and individuals who had customarily bought the products of said manufacturing companies from defendant corporation."

or lost most of the employees and has lost most of the agencies to sell and most of the steady customers;[5] that Charles has, through one man dominance, caused the discharge of Buss and C. U. Martin as directors, officers and employees and has deprived them of all participation in the business; that Charles operates the business as his private affair to the detriment of Buss and C. U. Martin and that Charles and plaintiffs hold contrary and opposing ideas about operating the business, all discussions being fruitless and productive of quarrels;[6] that Charles has denied plaintiffs access to the books, records and property of the Corporation; that the Corporation has paid no dividends to Buss but has used the monies available therefor to pay excessive salaries to Charles; and that the investments of plaintiffs in the Corporation have deteriorated because of Charles' mismanagement.[7]

---

[5] These allegations are: ''That said corporation, by and through said CHARLES M. MARTIN, has discharged or lost most of the competent employees of said corporation, and has lost most of said manufacturing agencies and access to products thereof and business of customers who had long traded steadily with said corporation and thereby enabled said corporation to gain annually great profits therefrom.''

[6] These allegations are: ''That said corporation acting through the one man dominance of said CHARLES M. MARTIN has caused the discharge and severance of said C. U. MARTIN and RICHARD C. BUSS from their former positions as directors, officers and employees of said corporation, and said CHARLES M. MARTIN has initiated vehement and repeated personal quarrels, denunciations and verbal castigations against said C. U. MARTIN and RICHARD C. BUSS and particularly and repeatedly toward said C. U. MARTIN, all with the effect and result that said RICHARD C. BUSS and C. U. MARTIN are deprived of any and all participation in any part of the management, activity and business of said corporation. Said CHARLES M. MARTIN as majority stockholder manages and directs said corporation and all its activity and business as his private affair, in his own incompetent, wasteful manner and to the continual annoyance, loss and detriment of said RICHARD C. BUSS and C. U. MARTIN; that these plaintiffs and said CHARLES M. MARTIN hold contrary and opposing ideas as to nearly all phases of the management and conduct of said corporation and its control and all attempts at discussing the same between these plaintiffs and said CHARLES M. MARTIN end in no useful purpose and invoke constant bitterness, quarrelling and mutual disapproval.''

[7] These allegations are: ''That only after extreme tardiness and long delays have these plaintiffs received copies of annual reports of said corporation; these plaintiffs have, by said CHARLES M. MARTIN been deprived of access to the books and records and property of said corporation; these plaintiffs have, by said CHARLES M. MARTIN, been deprived of all rights to manage, direct or control any and all parts of the business of said corporation. That said corporation has by certain reports issued by said CHARLES M. MARTIN made profits adequate to pay dividends on the stock [sic] of said RICHARD C. BUSS. Said corporation has paid no dividend in the stock of said RICHARD C. BUSS for any fiscal year beginning after August 31, 1959, and has used money that should have been paid on stock of said RICHARD C. BUSS to pay excessive salaries to said

The complaint further alleges on information and belief "that said corporation has lost its more important manufacturing accounts which had produced for said corporation the greatest annual business and gross profits, by reason of the following factors of mismanagement: 1. Discharging by said Charles M. Martin of certain of the competent employees needed by said corporation to operate its business. 2. Causing the resignation of other competent employees. 3. Failing to hire and keep employed persons competent to carry on the business of said corporation. 4. Personally quarrelling with, criticizing, harassing and denouncing persons previously helpful to said corporation and its business. 5. Quarrelling and wrangling by said Charles M. Martin with customers of said corporation and manufacturers who normally had supplied said corporation with products to sell. 6. Failure to satisfy customers of said corporation and to, in a business way, comply with their needs and requirements. 7. Failure to hold the trade and goodwill of customers and manufacturers of many years relationship with said corporation. 8. Failure to have available and provide to customers technical and engineering assistance. 9. Failure to have on hand and available products needed by customers of long previous association with said corporation."

Defendants filed a motion to strike the entire complaint or, in the alternative, specified parts thereof. Additionally they demurred to the complaint asserting as specifications of demurrer (1) that it failed to state facts sufficient to constitute a cause of action; (2) that the court lacked jurisdiction of the subject matter; and (3) that it was uncertain in various particulars.[8] The court sustained the demurrer without leave to amend on the ground that it did not state facts sufficient to constitute a cause of action and "upon a wholly separate and independent basis" that the court lacked jurisdiction of the subject matter.[9] The record discloses no ruling on the motion to strike. On October 25, 1963 judgment was entered on the order sustaining the demurrer. This appeal followed.

---

CHARLES M. MARTIN; that the actual value of the investments of said RICHARD C. BUSS and C. U. MARTIN in said corporation has seriously deteriorated by reason of the manner in which said CHARLES M. MARTIN has controlled and mismanaged the business of said corporation."

[8]For the reasons previously noted (see fn. 2, *ante*) we confine ourselves herein to the first cause of action of the first amended complaint.

[9]The order sustaining the demurrer while in general terms is thus amplified by recitals in the judgment in apparent compliance with Code Civ. Proc., § 472d. (Cf. *Weinstock* v. *Eissler* (1964) 224 Cal.App.2d 212, 224 [36 Cal.Rptr. 537].)

On December 22, 1964 defendants filed a motion in this court to dismiss the instant appeal upon the ground that it is now moot.[10] We thereafter continued the motion to be heard with the cause on the merits, as has now been done.

The undisputed facts as disclosed by the motion and opposition thereto are these: Defendant Charles M. Martin is the son of C. U. Martin and the brother-in-law of plaintiff Buss. The stock of the Corporation consisted of two classes, preferred and common shares. At the time of the filing of the original and first amended complaints there were outstanding 540 shares of common stock, of which defendant Charles M. Martin owned 460 and Buss 80. At said times there were also outstanding 404 shares of *nonvoting* 8 percent preferred stock, of which Charles M. Martin owned 150, plaintiff C. U. Martin 250 and other persons 4. In December 1963, after the present appeal was taken, the 404 shares of preferred stock were redeemed by the Corporation. At about the same time, plaintiff C. U. Martin and the Corporation, as part of the redemption of said preferred shares, agreed to the redemption price and the former "agreed to, and thereafter did, on behalf of himself alone, cause the dismissal of this action as to all defendants."

To recapitulate, at the time of the commencement of the action plaintiffs Buss and C. U. Martin were, and for more than five years prior thereto had been, the record holders of 330 out of a total of 944 shares, both common and preferred, of which only 80 shares were common. Said plaintiffs therefore held more than $33\frac{1}{3}$ percent of the number of outstanding shares of both classes but less than $33\frac{1}{3}$ percent of the common stock alone. At the time of the filing of the motion to dismiss, all preferred shares having been redeemed and C. U. Martin having filed a dismissal on his own behalf, Buss, the sole remaining plaintiff, was the record holder of 80 shares of common out of a total of 540 shares, or considerably less than $33\frac{1}{3}$ per cent of the outstanding shares.

Thus defendants' position on the motion to dismiss the appeal supplements their position in the trial court presenting to us common if overlapping issues. In the trial court defendants urged that plaintiffs were required to hold not less than $33\frac{1}{3}$ percent of the outstanding *voting* shares in order to maintain the action. On their motion here they urge that,

---

[10]Defendants' motion was filed herein after appellants' opening brief but before respondents' brief.

because of the retirement of the preferred stock, plaintiff and appellant Buss does not have the standing to pursue the appeal or a subsequent action.

The record seems clear and counsel for Buss agrees that the coplaintiff Martin is no longer a party interested in the above appeal.[11] As to the sole remaining appellant Buss, we are therefore presented with the following two questions: (1) In order to file a complaint for involuntary dissolution under section 4650 subdivision (b) was it necessary that plaintiffs' specified ownership of outstanding shares be calculated only in reference to outstanding shares with voting rights, exclusive of the nonvoting preferred stock? (2) Has Buss, the sole appellant, lost the right to pursue the appeal and further prosecute the action as a result of the retirement of the preferred shares? We have concluded that both of these questions should be answered in the negative.

No reported California case decisive of the first question has been cited or discovered. However, Ballantine & Sterling in discussing the requirements for filing a complaint by shareholders states that "Such shareholders . . . need not be holders of shares possessing voting privileges." (1 Ballantine & Sterling, Cal. Corporation Laws, 4th ed., § 359, p. 639.) ▮ Witkin, making no distinction between classes or series of shares on any basis including that of voting rights, states that "the *holders* of record for 6 months of one-third of the *shares*" can bring the action. (3 Witkin, Summary Cal. Law (1960) p. 2401.) We think that this is a fair and reasonable construction of the statute. By its clear language the statute imposes a limitation on the remedy provided by denying its availability to certain types of corporations and requiring that the shareholder plaintiffs hold a specified percentage of outstanding shares for a specified period. The statute does not expressly state that such shares must be those with voting rights nor does it contain any other limiting description of outstanding shares. If the Legislature intended to restrict the remedy to shareholders having a specified percentage of outstanding *voting* shares or of outstanding shares of *common* stock, it could very easily have said so.[12] It would clearly

---

[11] Said counsel, who represented both plaintiffs below and on appeal, has advised us that C. U. Martin has filed a dismissal of the action on his own behalf in the court below and that the sole remaining appellant is Frances M. Buss, as executrix.

[12] The Legislature did not add any further limitation as to the kind or class of outstanding shares upon amending the section in 1965. On the contrary, it made the remedy *more available* by adding to subdivision (b)

entail a substantial revision of the section to construe the term outstanding shares to mean outstanding *voting* shares.

Substantially the same conclusion was reached in *Kistler* v. *Caldwell Cotton Mills Co.* (1934) 205 N.C. 809 [172 S.E. 373], brought under a statute authorizing an action for dissolution by stockholders "owning one-fifth or more in amount of the paid-up stock of any corporation." The defendant Caldwell Cotton Mills Corporation had outstanding 2,495 shares of common stock and 1,000 shares of preferred, totalling 3,495 shares. The holders of the preferred shares were not entitled to voting privileges. Suit was brought by owners of 200 shares common (roughly 2/25 of the common shares) and 690 shares preferred (roughly 7/10 of the preferred shares), totalling roughly 25½ percent of all stock together and therefore more than one-fifth. Rejecting the contention that the plaintiffs could not bring the action because they did not own one-fifth of the common stock, the Supreme Court of North Carolina said: "No distinction is made in the statute between holders of the common and holders of the preferred stock of a corporation, when its dissolution is sought under the provisions of the statute, . . . . It is also immaterial that the holders of the preferred stock have no voting powers or privileges, as in the instant case. . . . The holders of preferred stock of a corporation are not creditors and have no rights as such. . . . They are, however, stockholders of the corporation, and subject to the terms and conditions on which their stock was issued, have all the rights of stockholders, . . . . The preferred stock forms a part of the capital stock of the corporation." (172 S.E. at p. 375.)

*Morrell* v. *Geo. Brooks & Son Co.* (Del. 1908) 164 F. 501, cited by defendants, does not compel a contrary view. That case was concerned with the right of shareholders to *vote* for the disposition of corporate assets under specified provisions of the articles of incorporation and did not involve a statute authorizing proceedings for involuntary dissolution.

■ Turning to the second question, have the subsequent developments alluded to above deprived appellant Buss of her right to pursue this appeal and further prosecute the action? We think not. As we have explained, plaintiffs Buss and Martin held sufficient stock to file the instant complaint and

(see fn. 3, *ante*) the following language: "exclusive of shares owned by persons who are alleged in the complaint and subsequently found by the court to have personally participated in any of the transactions enumerated in subdivision (e) of Section 4651."

invoke the jurisdiction of the superior court to order a dissolution of the Corporation. Jurisdiction having attached and once acquired is not defeated by subsequent events which had they occurred prior to the commencement of the action might have prevented jurisdiction at the outset. (*Kent* v. *Williams* (1905) 146 Cal. 3, 10 [79 P. 527]; *Ransome-Crummey Co.* v. *Martenstein* (1914) 167 Cal. 406, 408-409 [139 P. 1060]; *Adoption of Barnett* (1960) 54 Cal.2d 370, 377 [6 Cal.Rptr. 562, 354 P.2d 18]; *Maloney* v. *Maloney* (1944) 67 Cal.App.2d 278, 280 [154 P.2d 426]; 1 Witkin, Cal. Procedure (1954) p. 454.) Indeed at oral argument counsel for defendants conceded that if the court had initially acquired jurisdiction, it was not lost by the redemption of the preferred stock.

We also find persuasive *Abalian* v. *Townsend Social Center, Inc.* (1952) 112 Cal.App.2d 441 [246 P.2d 965], cited by appellant herein, where an action was brought under section 4650, subdivision (b) for the involuntary dissolution of a nonprofit membership corporation operating a social club. At the outset of the trial, the parties stipulated that there were 196 valid memberships and that there were 68 valid names ''who were members . . . that are on the complaint,'' thereby establishing that the complaint was brought by persons holding not less than 33⅓ percent of the outstanding shares. On appeal from a judgment ordering dissolution it was contended that the court should have admitted the affidavits of 24 persons listed in the complaint as plaintiffs to the effect that they had never knowingly become plaintiffs, the theory of contention being that the elimination of these parties would reduce the number of plaintiff-members to less than one-third. Rejecting this contention, since the affidavits were inadmissible hearsay, the court said: ''The trial court obviously had jurisdiction to hear a controversy of the present nature. The subject matter involved was the dissolution of the center. . . . Furthermore, 'the fact that these 24 plaintiffs desired to withdraw after suit was filed has no bearing whatever on whether or not the Court acquired jurisdiction at the time suit was brought.' '' (112 Cal.App.2d 441, 446-447 *passim.*)

Finally, we think our conclusion finds additional support in the language fashioning the statutory scheme of involuntary dissolution. ''In construing the statutory provisions a court is not authorized to insert qualifying provisions not included and may not·rewrite the statute to conform to an assumed intention which does not appear from its language. The court is limited to the intention expressed. [Citations.]'' (*People* v.

*One 1940 Ford V-8 Coupe* (1950) 36 Cal.2d 471, 475 [224 P.2d 677]; *Vallerga* v. *Department of Alcoholic Beverage Control* (1959) 53 Cal.2d 313, 318 [347 P.2d 909]; *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365-366 [5 P.2d 882]; *Richardson* v. *City of San Diego* (1961) 193 Cal.App.2d 648, 650 [14 Cal.Rptr. 494]; Code Civ. Proc., § 1858; see 2 Sutherland, Statutory Construction (1943) § 4924, p. 454, fn. 3.) Applying these principles to the instant case, we note that section 4650 requires that there be holders of 33⅓ percent of outstanding shares to *file* the complaint. Nowhere does there appear, either expressly or by implication, language indicating that the 33⅓ percent *remain* as plaintiffs throughout the maintenance of the suit. Nor is there any language to the effect that none but the above number of shareholders may bring or *maintain* an action for involuntary dissolution.

We now turn to examine the correctness of the court's order sustaining the demurrer without leave to amend. As previously indicated, while the court's minute order is in general terms, the judgment itself indicates that the demurrer was sustained on the twofold basis of insufficiency of facts and lack of subject matter jurisdiction. ■ While a demurrer on the ground "That the complaint does not state facts sufficient to constitute a cause of action" (Code Civ. Proc., § 430, subd. (6)) is called a general demurrer (2 Witkin, Cal. Procedure (1954) pp. 1475-1476; 2 Chadbourn, Grossman, Van Alstyne, Cal. Pleading, § 1154, p. 383; 39 Cal.Jur.2d 194) and demurrers on other grounds including that of lack of jurisdiction (Code Civ. Proc., § 430, subd. (1)) are known as special demurrers (2 Witkin, *op. cit.*, p. 1480; 2 Chadbourn, *op. cit, supra*), nevertheless respected authority has said that "it seems evident that a demurrer for lack of jurisdiction of subject matter, which operates like and is functionally similar to a demurrer for insufficiency of facts, should also be regarded as a *general demurrer.*" (2 Chadbourn, *op. cit., supra* and see fn. 6.) It is our view therefore that the second ground upon which the court sustained the demurrer must also be considered one of general demurrer and that the court did not rule on the special demurrer.[13]

■ "In determining whether or not the complaint is sufficient as against the demurrer, upon the ground that it does not state facts sufficient to constitute a cause of action, the rule is, that if upon a consideration of all the facts stated it

---

[13]Not ruled upon was the special demurrer for uncertainty.

appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged." (*Matteson* v. *Wagoner* (1905) 147 Cal. 739, 742 [82 P. 436]; *Gressley* v. *Williams* (1961) 193 Cal.App.2d 636, 639 [14 Cal. Rptr. 496]; *Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App. 2d 50, 59 [35 Cal.Rptr. 652].) In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Buxbom* v. *Smith* (1944) 23 Cal.2d 535, 542 [145 P.2d 305]; *Gressley* v. *Williams, supra*; *Wise* v. *Southern Pacific Co., supra.*)

Applying the above rules, we think that the complaint clearly sets forth sufficient facts to establish a right to dissolution under subdivisions (e) and (f) of section 4651. (See fn. 3, *ante.*) The former subdivision provides that proceedings for involuntary dissolution may be entertained when it is shown that the directors or those in control of the corporation "have been guilty of persistent . . . mismanagement, or abuse of authority, or persistent unfairness toward minority shareholders, or its property is being misapplied, wasted, or lost by its directors or officers." It is to be noted that this subdivision speaks in the disjunctive.

Mismanagement has been said to mean " 'wrong, bad or bungling management' " (*In re Marshall* (1949) 363 Pa. 326 [69 A.2d 619, 625]); "To 'mismanage' means to manage badly, improperly, or unskillfully" (*McKnight* v. *United States* (9th Cir. 1935) 78 F.2d 931, 933). In considering mismanagement as a grounds for the removal of an executor or administrator under Probate Code section 521, the court in *Estate of Palm* (1945) 68 Cal.App.2d 204, 210 [156 P.2d 62], said: "The term 'mismanage' has been construed to mean merely that the business of the estate has been badly, improperly or unskillfully conducted" citing the *McKnight* case. Webster defines the term thusly: "to manage wrongly or incompetently." (Webster's Third New International Dictionary.) Webster also defines the term "persistent" as follows: "continuing in a course of action without regard to opposition or previous failure: tenacious of position or purpose: inclined to persist . . . existing for a long or longer than usual time or continuously: ENDURING, LINGERING." (Webster, *op. cit.*)

The allegations heretofore set forth by us both in substance and in detail (see fns. 5 and 6, *ante*) charging that defendant Charles Martin lost most of the manufacturing agencies and access to products which had been built up and accumulated by his father over many years (see fn. 4, *ante*); that he quarrelled and wrangled with customers; that he failed to comply with their needs and hold their trade and good will; that he discharged and lost most of the competent employees of the Corporation and failed to hire competent persons to carry on its business; and that as the dominant and majority shareholder he managed and directed the corporation "as his private affair" to the loss and detriment of plaintiff, all fall within the compass of the term "persistent mismanagement" as heretofore defined and, especially when read as a whole, assert in essence that said defendant continued to manage the Corporation wrongly and incompetently.

The above allegations also establish a persistent abuse of authority and a persistent unfairness toward minority stockholders, especially when construed in the light of the allegation that Charles in his dominant position as majority stockholder managed and conducted the Corporation as his private affair. On this aspect of subdivision (e) other allegations (see fns. 6 and 7, *ante* and other allegations set forth *supra*) add their support: that Charles deprived plaintiffs of access to books and records; that he used the money of the Corporation to pay excessive salaries to himself; and that as a result of his conduct of the business the actual value of plaintiff's investment has deteriorated.

As previously noted (see fn. 3, *ante*), subdivision (f) of section 4651 specifies as a reason for the proceedings that the liquidation is "reasonably necessary for the protection of the rights or interests . . . of the complaining shareholders." No discussion is required to demonstrate that the allegations considered above are sufficient at the same time to establish this reason.

We briefly consider the allegations of the complaint insofar as they are seemingly directed toward the establishment of the reason for dissolution specified in subdivision (d) of section 4651. ▮ In essence that section (see fn. 3, *ante*) permits the proceedings where there is "internal dissension *and* two or more factions of shareholders in the corporation are so deadlocked that its business cannot longer be conducted with advantage to its shareholders." (Italics added.) We observe that the language is in the conjunctive and that two factual

elements must exist to establish the reason. ■ While the factual element of internal dissension clearly appears, the complaint is not as explicit in pleading the element of "deadlock." However it does allege that plaintiffs and defendant Charles Martin hold contrary and opposing views on nearly all phases of the conduct of the business and that "*all attempts* at discussing the same between these plaintiffs and said CHARLES M. MARTIN *end in no useful purpose* and invoke constant bitterness, quarrelling and *mutual disapproval.*" (Italics added.) Liberally construed in accordance with the principles heretofore set forth, we think that the allegations plead both elements of subdivision (d) and that as against a general demurrer they constitute a sufficient showing under said subdivision.

We conclude that the complaint is good as against both grounds of general demurrer. As explained previously, the court did not rule on the special demurrer. ■ "When a demurrer based upon both general and special grounds is sustained and the order mentions only the general ground, impliedly the ruling was made either without consideration of the special grounds or upon a determination that they are not well taken. If the general demurrer was sustained erroneously, the trial judge should be directed to consider the special grounds. [Citation.] Under a contrary rule, the pleader could not profit from the appeal unless he has anticipated the ruling to be made on the special demurrer and amended his pleading to remedy any defects." (*Stowe* v. *Fritzie Hotels, Inc.* (1955) 44 Cal.2d 416, 425-426 [282 P.2d 890]; *Weinstock* v. *Eissler, supra,* 224 Cal.App.2d 212, 223-224; see *Guilliams* v. *Hollywood Hospital* (1941) 18 Cal.2d 97, 104 [114 P.2d 1]; *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 720 [128 P.2d 522, 141 A.L.R. 1358].) We therefore do not decide that the complaint was not subject to the special demurrer and the trial court on remand may in its discretion require the clarification of uncertainties alleged to exist in the complaint.

■ As previously stated (see fn. 2, *ante*), the court having sustained the demurrer to the first cause of action without leave to amend, contemporaneously with the judgment entered thereon, entered a separate order dismissing the second through fifth causes of action. These causes involved only plaintiff Buss. Since the sustaining of the demurrer was error, we hold that the dismissal without prejudice of the remaining causes of action was also error.

The motion to dismiss the appeal insofar as it pertains to appellant C. U. Martin is granted and insofar as it pertains to appellant Frances M. Buss, as executrix of the last will and testament of Richard C. Buss, deceased, is denied, and as to appellant C. U. Martin only, the appeal is dismissed. The judgment is reversed insofar as it pertains to appellant Frances M. Buss, as executrix of the last will and testament of Richard C. Buss, deceased, and as to said appellant the cause is remanded with directions to the trial court to overrule the general demurrer and to rule on the points presented by the special demurrer. The "Order of Dismissal Without Prejudice as to the Second Through and including the Fifth Causes of Action of the First Amended Complaint" entered on October 25, 1963 is reversed. Said appellant Frances M. Buss, as executrix, shall recover costs on appeal. Respondents shall recover from appellant C. U. Martin such costs on appeal as relate to the appeal of C. U. Martin.

Molinari, J., and Sims, J., concurred.