[No. B169199. Second Dist., Div. Eight. Mar. 29, 2004.]

KLINE HAWKES CALIFORNIA SBIC, L.P., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
IDEALAB et al., Real Parties in Interest.

## COUNSEL

Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, Louis R. Miller, Seong H. Kim; Vinson & Elkins and Gary Ewell for Petitioners.

No appearance by Respondent.

Irell & Manella, Gregory R. Smith, David Siegel, Daniel P. Lefler and Charles Elder for Real Parties in Interest.

**O**PINION

**FLIER, J.**—Petitioners filed an action against real parties in interest, including Idealab, Inc., for breach of fiduciary duty, removal of directors, inspection of corporate books and records, breach of contract and fraud. In the fourth cause of action of the third amended complaint, petitioners seek the dissolution and liquidation of Idealab. Petitioners allege that they are owners of 7.25 million Series D preferred stock in Idealab, which they purchased for $725 million, and that Series D preferred stock has a liquidation preference of $100. Petitioners contend that this gives them standing under Corporations Code section 1800, subdivision (a)(2)(iii) to file a petition for the involuntary dissolution of Idealab.[1]

The trial court disagreed and found that petitioners did not have standing to file a petition for the dissolution and liquidation of Idealab. The court sustained the demurrer by real parties in interest to the fourth cause of action without leave to amend. Pursuant to the provisions of Code of Civil Procedure section 166.1, the trial court indicated that its ruling on the demurrer to the fourth cause of action involved a controlling question of law as to which there is a substantial difference of opinion and that the resolution of this question by the appellate court would materially advance the conclusion of the litigation.[2] We issued an alternative writ and address the merits of the question identified by the trial court.

---

[1] Corporations Code section 1800 provides in relevant part: " (a) A verified complaint for involuntary dissolution of a corporation on any one or more of the grounds specified in subdivision (b) may be filed in the superior court of the proper county by any of the following persons: [¶] . . . [¶] (2) A shareholder or shareholders who hold shares representing not less than 33 1/3 percent of (i) the total number of outstanding shares (assuming conversion of any preferred shares convertible into common shares) or (ii) the outstanding common shares or (iii) the equity of the corporation, exclusive in each case of shares owned by persons who have personally participated in any of the transactions enumerated in paragraph (4) of subdivision (b), or any shareholder or shareholders of a close corporation." Subdivision (b)(4) states: "(b) The grounds for involuntary dissolution are that: [¶] . . . [¶] (4) Those in control of the corporation have been guilty of or have knowingly countenanced persistent and pervasive fraud, mismanagement or abuse of authority or persistent unfairness toward any shareholders or its property is being misapplied or wasted by its directors or officers."

[2] Code of Civil Procedure section 166.1 provides: "Upon the written request of any party or his or her counsel, or at the judge's discretion, a judge may indicate in any interlocutory order a belief that there is a controlling question of law as to which there are substantial grounds for difference of opinion, appellate resolution of which may materially advance the conclusion of the litigation. Neither the denial of a request for, nor the objection of another party or counsel to, such a commentary in the interlocutory order, may be grounds for a writ or appeal."

## QUESTION PRESENTED

■ Under California Corporations Code section 1800, subdivision (a)(2)(iii), a complaint for the involuntary dissolution of a corporation may be filed by a shareholder or shareholders who hold shares representing not less than 33 1/3 percent of the equity of the corporation. The question is whether petitioners have alleged facts sufficient to satisfy this requirement. We conclude that, while petitioners have failed to correctly describe the equity of the corporation for the purposes of Corporations Code section 1800, subdivision (a)(2)(iii), they may be able to do so, and we remand with directions to sustain the demurrer with leave to amend.

## THE RIGHT OF A MINORITY SHAREHOLDER TO BRING AN ACTION FOR THE INVOLUNTARY DISSOLUTION OF THE CORPORATION

Prior to 1931, under California law minority shareholders had no right to bring an action for the dissolution of the corporation. (*Collins v. Consolidated Water Co.* (1932) 122 Cal.App. 348, 349 [9 P.2d 872].) In 1931, the Legislature enacted former Civil Code section 404, which gave a shareholder or shareholders with not less than 25 percent "of outstanding shares" the right to file a petition for the involuntary winding up of a corporation. (Stats. 1931, ch. 862, § 2, p. 1829.) In 1947, this provision was shifted to former Corporations Code section 4650 and the percentage of ownership required was raised to 33 1/3 percent of outstanding shares. (Stats. 1947, ch. 1038, p. 2387.)

In *Buss v. J. O. Martin Co.* (1966) 241 Cal.App.2d 123, 130 [50 Cal.Rptr. 206], the Court of Appeal rejected the suggestion that former Corporations Code section 4650 differentiated between shares with and without voting rights, or common and preferred stock, and held that the statute required nothing more than ownership of the 33 1/3 percent of shares, irrespective of the classification of, or the rights pertaining to, the shares that made up the required percentage. The court in *Buss v. J. O. Martin Co.* acknowledged that its decision was one of first impression and concluded that if there were to be distinctions between shares for the purposes of former Corporations Code section 4650, it was the Legislature's task to make those distinctions. (*Buss v. J. O. Martin Co., supra,* at pp. 130–131.)

The problem that was presented by the facts of *Buss v. J. O. Martin Co.* was that, upon the dissolution of a corporation, there may well be a difference, as there was in *Buss* and as there is in the case at bar, between common and preferred shares and that this difference should be accounted for when it comes to determine standing to sue for dissolution. It has been observed that *Buss* was "simply another illustration of the predilection of the Prior Law [law prior to 1977] to determine voting and other substantive rights of shareholders by counting pieces of paper regardless of what they represented." (2 Marsh et al., Cal. Corporation Law (4th ed. 2003) § 21.01, p. 21-4.)

The General Corporation Law of 1977 effected major changes in California law. (See 1 Marsh et al., Cal. Corporation Law (4th ed. 2004) § 1.02; 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 6 et seq.) One of the changes was the provision that is the subject of these proceedings.

Corporations Code section 1800 is the successor of former Corporations Code section 4650. Subdivision (a)(2) of section 1800 reflects the dissatisfaction with the mechanical rendering that *Buss v. J. O. Martin Co.* gave former section 4650. As shown by the legislative committee comment on section 1800, section 1800 was intended to expand the authority to initiate the involuntary dissolution of a corporation and to address the involuntary dissolution of a corporation with a multiclass stock structure: "Prior law permits such proceedings to be brought by the holder or holders of at least one-third of the outstanding shares (exclusive of certain shares). In the interest of extending this remedy to other shareholders in appropriate cases, this section expands the authority to initiate involuntary dissolution. For the protection of shareholders in a corporation having a multi-class stock structure, the holder of shares representing at least one-third of one of three alternative statements of ownership interest in a corporation are permitted to initiate an action under this section. Also, to give shareholders latitude and flexibility in protecting their interests, this section permits any person authorized in the articles to initiate these proceedings." (Legis. Com. com., 23 E West's Ann. Corp. Code (1990 ed.) foll. § 1800, p. 481.)

## CORPORATIONS CODE SECTION 1800

Under Corporations Code section 1800, subdivision (a)(2), shareholders who may file for the involuntary dissolution of a corporation are those shareholders who hold shares not less than 33 1/3 percent of the total of

outstanding shares (assuming conversion of any preferred shares convertible into common shares), or of the outstanding common shares, or of "the equity of the corporation."

■ " 'Shares' means the units into which the proprietary interests in a corporation are divided" (Corp. Code, § 184) and " '[s]hareholder' means one who is a holder of record of shares" (Corp. Code, § 185). The plain text of subdivision (a)(2) of section 1800 gives shareholders, and not others, the right to file a petition for dissolution. "A California corporation can only be dissolved in the manner and under the conditions prescribed in the Corporations Code." (*Keeler v. Schulte* (1957) 47 Cal.2d 801, 803 [306 P.2d 430].) With specific reference to section 1800, subdivision (a)(2)(iii), the text of this provision gives *shareholders* who hold *shares* not less than 33 1/3 percent *of the equity of the corporation* the right to file for dissolution. Subdivision (a)(2)(iii) provides: "(a) A verified complaint for involuntary dissolution . . . may be filed . . . by any of the following persons: [¶] . . . [¶] (2) A shareholder or shareholders who hold shares representing not less than 33 1/3 percent of . . . (iii) the equity of the corporation."

■ We must therefore reject the suggestion by real parties in interest that "shares representing" the "equity of the corporation," as that phrase is used in subdivision (a)(2)(iii) of section 1800, includes warrants, options, convertible debt "and any other instrument reflecting a beneficial ownership interest." Warrants, options and convertible debt are not shares and the holders of these instruments are not shareholders.

Subdivision (a)(2)(iii) of section 1800 is intended to address an involuntary dissolution of a corporation with a multiclass stock structure. Subdivision (a)(2)(i) and (ii) refer, respectively, to the "total number of outstanding shares (assuming conversion of any preferred shares convertible into common shares)" and the "outstanding common shares." Subdivision (a)(2)(iii) is intended to apply to situations not covered by subdivision (a)(2)(i) and (ii). (*Rodriguez v. Superior Court* (1993) 14 Cal.App.4th 1260, 1269 [18 Cal.Rptr.2d 120] [statute should be interpreted so that effect is given to all of its provisions, and so that no part will be superfluous].) Examples of this are where holders of common and preferred stock combine to petition for a voluntary dissolution or where, as here, the petitioners are holders of preferred stock. In any event, "the equity of the corporation" referred to in subdivision (a)(2)(iii) is equity that is reflected *by shares held by shareholders.*

■ The history of Corporations Code section 1800 confirms that subdivision (a)(2)(iii) was intended to function as an alternative to 33 1/3 percent of the total of the outstanding common shares in order to determine the standing of a shareholder to file a petition for a dissolution of the corporation. While shares represent the propriety interests in the corporation (Corp. Code, § 184), common shares are not the only measure of proprietary interests in the corporation upon a dissolution of the corporation. Preferred shares are often intended to function as a measure of proprietary interest in the dissolution of a corporation. (See 2 Marsh et al., Cal. Corporation Law, *supra*, § 21.01.)

## EQUITY OF THE CORPORATION

■ Upon the dissolution of a corporation, the equity of the corporation is determined by the operation and the application of Corporations Code section 2004. "After determining that all the known debts and liabilities of a corporation in the process of winding up have been paid or adequately provided for, the board shall distribute all the remaining corporate assets among the shareholders according to their respective rights and preferences or, if there are no shareholders, to the persons entitled thereto." (Corp. Code, § 2004.) ■ Equity is the value of the property or enterprise above the indebtedness against it. (*Crane v. Commissioner* (1947) 331 U.S. 1, 7 [91 L.Ed. 1301, 67 S.Ct. 1047]; *Sharer v. Creative Leasing, Inc.* (Ala. 1993) 612 So.2d 1191, 1195; *Dorfman v. Dorfman* (Tex.Civ.App. 1970) 457 S.W.2d 417, 422.) Generally accepted accounting principles are in accord. (Financial Accounting Standards Board, Statement of Financial Accounting Concepts, No. 6: Elements of Financial Statements (1985) p. 21, ¶ 50; Corp. Code, § 114 [references to earnings and liabilities in Corporations Code conform to generally accepted accounting principles].)

We disagree with real parties in interest that the measure of equity as the value of the property or assets less liabilities or liens is unpredictable and difficult to apply. Predictable or not, this is the measure applied upon the dissolution of the corporation (Corp. Code, § 2004), which is the relevant inquiry when shareholders petition for the dissolution of the corporation. Moreover, a statement of assets and liabilities is one of the basic functions of a financial statement. Equity in its broadly accepted sense is therefore no more "difficult to apply" than it is to prepare a sound financial statement, which is a reasonable expectation of any business enterprise.

## PREFERRED STOCK WITH LIQUIDATION PREFERENCE

■ In addition to shareholders holding common stock, there may be, as in this case, shareholders who hold preferred stock. Preferred stock has

preference over common stock in the distribution of assets upon the dissolution of a corporation. " 'Liquidation price' or 'liquidation preference' means amounts payable on shares of any class upon voluntary or involuntary dissolution, winding up or distribution of the entire assets of the corporation, including any cumulative dividends accrued and unpaid, in priority to shares of another class or classes." (Corp. Code, § 172.) "The liquidation preference of a preferred stock refers to the amount that the holders of the preferred shares are entitled to receive upon any liquidation of the corporation and distribution of its assets, after the payment of all of its liabilities, before the holders of the common shares or any junior class or series of preferred shares will receive anything." (1 Marsh et al., Cal. Corporation Law, (2002-2 supp.) § 7.03[A], p. 7-15).)

■ Liquidation preferences are a significant ownership interest protected by Corporations Code section 2007. While upon approval of the board and the outstanding shares of each class the liquidation rights of preferred shares may be altered, a dissenting shareholder with a liquidation preference is entitled to be paid the amount of the liquidation preference in cash. (Corp. Code, § 2007, subds. (a) & (b).)

■ The equity of a corporation *attributable to an outstanding issue of preferred shares* is the liquidation preference of that preferred stock plus the amount of any accrued and unpaid dividends. (2 Marsh et al., Cal. Corporation Law, *supra*, § 21.01, p. 21-5.) It may be that payment of the liquidation preference exhausts the entire equity of the corporation. However, it is also possible that the equity of the corporation is substantial enough to satisfy the liquidation preference of the preferred shares, as well as the outstanding shares of common stock. In such an event, it is likely that 33 1/3 percent of the equity of the corporation will be attributable to preferred, as well as to common stock. If this is the case, the requirement of subdivision (a)(2)(iii) of Corporations Code section 1800 that the petition for dissolution be filed by "shareholders who hold shares representing not less than 33 1/3 percent of . . . the equity of the corporation" can only be met by a combination of preferred and common stock.

Real parties in interest contend that if the Legislature intended to include liquidation preferences as a measure of the standing to bring a dissolution claim, Corporations Code section 1800, subdivision (a)(2)(iii) would require "a *liquidation preference* not less than 33 1/3 percent of . . . the net assets of the corporation." (Italics added.) This does not follow. Such a wording of subdivision (a)(2)(iii) would not account for situations where the equity

of the corporation was sufficient to satisfy both common and preferred shares and where, as a necessary consequence, common and preferred shares would have to combine to meet the 33 1/3 percent requirement of subdivision (a)(2)(iii).

■ Real parties in interest also contend that it is erroneous to view liquidation preferences as an "equity of the corporation." This argument misunderstands the role of liquidation preferences in determining whether the 33 1/3 percent threshold of subdivision (a)(2)(iii) of Corporations Code section 1800 has been met. The liquidation preference is not part of the equity of the corporation. It is a measure of the shareholders entitlement to the equity, i.e., the net assets of the corporation upon the dissolution of the corporation.

Real parties in interest contend that there is nothing to suggest that the Legislature intended to "protect preferred shareholders' liquidation preferences with respect to Section 1800." The liquidation preferences of preferred shareholders are protected by Corporations Code section 172. It does not follow from this that the Legislature intended to deprive preferred shareholders of the right to file a petition for dissolution. Neither logic nor the structure of Corporations Code section 1800, subdivision (a)(2) supports the suggestion that preferred shareholders are to be deprived of the right to file a petition for dissolution. Preferred shareholders holding liquidation preferences are first in line upon a distribution of the equity of the corporation and are therefore vitally affected by a petition for dissolution. And the structure of Corporations Code section 1800, subdivision (a)(2) makes clear that subdivision (a)(2)(iii) is a measure of standing that does *not* apply *solely* to common stock. Subdivision (a)(2)(i) and (ii) applies respectively to the "total number of outstanding shares (assuming conversion of any preferred shares convertible into common shares" and to "the outstanding common shares." It stands to reason that subdivision (a)(2)(iii) was intended to include holders of preferred stock and that explicit mention thereof was omitted in order to preserve the flexibility required to meet situations where common and preferred stock have to combine to meet the 33 1/3 percent threshold. The history of Corporations Code section 1800, particularly the dissatisfaction with the interpretation given to the predecessor of this section by *Buss v. J. O. Martin Co., supra,* 241 Cal.App.2d 123, confirms this conclusion. (See 2 Marsh et al., Cal. Corporation Law, *supra,* § 21.01.)

Real parties in interest contend that the Legislature could not have intended to give shareholders with a small interest in the corporation the right to file a petition for dissolution. The assumption behind this argument is that preferred shareholders have a "small interest" in the equity of the corporation. The assumption may or may not be correct in any given case. In the case at bar, it

is alleged that petitioners bought 7.25 million series D preferred shares at $100 per share for a total investment of $725 million. It is alleged that the paid-in capital of Idealab is $1.2 billion. Even by this rough measure, it is apparent that petitioners' interest in Idealab, especially upon its liquidation, is not small.

**PETITIONERS' ALLEGATIONS REGARDING THE
REQUIREMENTS OF CORPORATIONS CODE
SECTION 1800, SUBDIVISION (a)(2)(iii)**

Petitioners allege that the equity of Idealab is the sum total of the face value of shares issued and outstanding, i.e., $1,266,073,000. Petitioners rely on a statement issued by the Financial Accounting Standards Board that "[e]quity is originally created by owners' investments in an enterprise and may from time to time be augmented by additional investments by owners." (Financial Accounting Standards Board, Statement of Financial Accounting Concepts, No. 6: Elements of Financial Statements, *supra*, p. 26, ¶ 63.)

While this is how equity may be "originally created," it is not the equity of a corporation. The Financial Accounting Standards Board itself defines the equity of a "business enterprise" to be "the difference between the entity's assets and its liabilities." (Financial Accounting Standards Board, Statement of Financial Accounting Concepts, No. 6: Elements of Financial Statements, *supra*, p. 21, ¶ 50.) This is the definition of equity as it is generally understood (*Crane v. Commissioner, supra,* 331 U.S. at p. 7) and which applies to the term "equity of the corporation" set forth in Corporations Code section 1800, subdivision (a)(2)(iii).

■ The 7.25 million shares of Series D preferred stock with a liquidation preference of $100 a share constitute a claim of $725 million against the equity of Idealab. It is likely that this sum will constitute 33 1/3 percent of the equity of Idealab since Idealab's equity would have to exceed a sum in excess of $2.1 billion, in order for petitioners to fall short of the 33 1/3 percent threshold. However, on a matter as fundamental as a party's standing to sue, allegations should be direct and unequivocal and not inferential. (4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 354, p. 454.)

■ We note that subdivision (a)(2)(iii) of Corporations Code section 1800 provides that "shares owned by persons who have personally participated in any of the transactions enumerated in paragraph (4) of subdivision (b)" are to be excluded.[3] This provision is readily applied to subdivision (a)(2)(i) and (ii) since the shares to be excluded can be easily deducted from

---

[3] See footnote 1, *ante.*

"the total number of outstanding shares" (subd. (a)(2)(i)) and the "outstanding common shares" (subd. (a)(2)(ii)). However, in the instance of subdivision (a)(2)(iii), the threshold measure of 33 1/3 percent is applied against the *equity* of the corporation and not shares of outstanding stock. Equity is net assets, or assets less liabilities; equity is not shares of the corporation. Thus, in the instance of subdivision (a)(2)(iii), it makes no sense to exclude *shares* held by persons who have "personally participated in any of the transactions enumerated in paragraph (4) of subdivision (b)." Statutes are to be interpreted to avoid absurd results. (*Unzueta v. Ocean View School Dist.* (1992) 6 Cal.App.4th 1689, 1698 [8 Cal.Rptr.2d 614].) The object of subdivision (a)(2)(iii) is to ensure that the shareholders petitioning for dissolution hold shares representing at least 33 1/3 percent of the equity of the corporation. Persons who have "participated in any of the transactions enumerated in paragraph (4) of subdivision (b)" will not be persons who are petitioning for dissolution. Thus, for the guidance of the court and the parties, we hold that the phrase "exclusive in each case of shares" refers to subdivision (a)(2)(i) and (ii), and not to subdivision (a)(2)(iii).

 Real parties in interest express the concern that testing the allegations of a complaint on a demurrer for compliance with Corporations Code section 1800, subdivision (a)(2)(iii) is likely to amount to a minitrial. We do not believe this to be the case. The statement of the petitioners' holding of shares, whether common and/or preferred, is a straightforward matter. The allegation of the "equity of the corporation" as the assets of the corporation less its liabilities can be based on the corporation's financial statement. This allegation, as all other averments of ultimate fact, is subject to challenge prior to trial by a motion for summary judgment. However, under the usual rules, a well-pleaded allegation of the equity of the corporation must be accepted as true for purposes of the demurrer.

Since we conclude that petitioners should be given an opportunity to allege that they hold shares of not less than 33 1/3 percent of the equity of Idealab, we address the trial court's conclusion that petitioners could not, as a matter of law, allege that they satisfied the threshold requirement of Corporations Code section 1800, subdivision (a)(2)(iii).

The trial court concluded, correctly, that "equity equates to net assets," but went on to hold that petitioners' "percentage ownership of Idealab's net assets" could not be shown by the amount they paid for their shares. The court held that one paying more for the "same share" is not entitled to a greater ownership interest than one who had paid less for the same share.

Corporations Code section 172 recognizes that preferred shares may be entitled to a liquidation preference, as is true of petitioners' Series D preferred shares. Petitioners' Series D preferred shares have a liquidation price of $100 per share and they are preferred over common shares in the distribution of the assets of Idealab. The trial court's ruling does not take these facts into account which, by definition, create differences between classes of shares. We conclude that a proper interpretation of Corporations Code section 1800, subdivision (a)(2)(iii) gives petitioners the right to file a petition for the dissolution of Idealab, if their Series D preferred shares represent 33 1/3 percent of the equity of Idealab.

## DISPOSITION

The petition is granted and the alternative writ is discharged. The matter is remanded with directions for the trial court to sustain the demurrer to the fourth cause of action with leave to amend and for further proceedings consistent with this opinion. The parties are to bear their own costs.

Cooper, P. J., and Boland, J., concurred.