[No. B050272. Second Dist., Div. Three. July 23, 1990.]

MALIBU COMMITTEE FOR INCORPORATION et al., Plaintiffs and Respondents, v.
LOS ANGELES COUNTY BOARD OF SUPERVISORS et al., Defendants and Appellants.

## COUNSEL

De Witt W. Clinton, County Counsel, Lloyd W. Pellman, Assistant County Counsel, Jonathan B. Crane, Deputy County Counsel, Jones, Day, Reavis & Pogue, Elwood G. Lui and Daniel J. McLoon for Defendants and Appellants.

Segal, Ritchie, Simmons & Stark, Graham A. Ritchie, Troy & Gould and Jeffrey W. Kramer for Plaintiffs and Respondents.

## OPINION

**KLEIN, P. J.**—Defendants and appellants the Los Angeles County Board of Supervisors (the Board) appeal a judgment granting a peremptory writ of mandate in favor of plaintiffs and respondents the Malibu Committee for Incorporation, a nonprofit public benefit corporation, and Robert Arey, an individual (collectively, MCI).

### SUMMARY STATEMENT

This case involves the interpretation of a portion of the Cortese-Knox Local Government Reorganization Act of 1985 (the Act). (Gov. Code, §§ 56000 et seq., 57202.)[1]

The judgment directs the Board as the conducting authority pursuant to the Act to cause the effective date of the incorporation of the new city of Malibu to occur upon the recordation of the postelection certificate of completion with the Los Angeles County (County) recorder. In its interpretation of the statutes involved, the trial court mandated the Board to such action because the County's local agency formation commission (LAFCO),[2] had not set an effective date, and the effective date set by the Board was beyond the recordation date.

The question presented is whether the legislative statutory scheme governing the incorporation of new cities, and specifically, within the County, was complied with by the entities covered thereby. More precisely, the issue is focused on whether the Board had authority to fix the effective date

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] LAFCO is not peculiar to Los Angeles County. Each county has a local agency formation commission. (§ 56325.)

for the city of Malibu after LAFCO failed to do so in its terms and conditions, or whether such omission invokes section 57202, subdivision (c) of the Act. That section provides if no effective date has been specified in any of the terms and conditions, the recordation date is the effective date.

Because we conclude the Act authorizes the Board to fix an effective date if LAFCO has not done so, the judgment is reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

The formal cityhood efforts were set in motion with MCI's March 1988 filing of an application with LAFCO to initiate proceedings to incorporate the unincorporated area of the County known as Malibu. LAFCO is a seven-member commission in the County, comprised of three representatives appointed by the Board, three representatives of cities in the County and one representative of the general public. As part of a broad statutory scheme, it reviews proposals for incorporation. (§§ 56326, 56375.)

On July 26, 1989, LAFCO adopted a resolution approving the Malibu incorporation proposal, subject to specified terms and conditions, including the retention of jurisdiction by the County over the inchoate Malibu sewer project for up to 10 years. LAFCO's terms and conditions did not specify an effective date of incorporation.

Following LAFCO's adoption of the resolution, the Board, as the conducting authority under the Act, conducted a noticed hearing on the proposed incorporation. On March 29, 1990, the Board duly adopted a resolution and ordered Malibu incorporated, subject to confirmation by the voters and to specified terms and conditions. The Board's resolution set the election on the proposed incorporation for June 5, 1990.

Section 8 of the Board's resolution fixed March 28, 1991, as the effective date of the incorporation, provided the Malibu voters approved the incorporation measure. The record of the hearing discloses that the effective date was deferred in order to ensure substantial completion of the regulatory process before the new city could interfere with the sewer project. In addition, the Board was concerned an earlier effective date would be inconsistent with a fiscally prudent transition.

MCI thereupon filed a petition for writ of mandate (Code Civ. Proc., § 1085) to compel the Board to delete section 8 of its resolution and instead,

to provide the incorporation would be effective on the date of recordation of the postelection certificate of completion with the county recorder.[3]

The hearing on the petition was held on May 9, 1990, and the petition was granted. The trial court held, inter alia, "only LAFCO may set an effective date and that if LAFCO does not expressly do so, the [recordation] date specified by [Government Code] section 57202[, subdivision ](c) then controls." Judgment was entered on May 11, 1990, and the Board filed a notice of appeal four days later.

On May 31, 1990, the trial court dissolved the automatic stay pending appeal so as to allow the incorporation, if approved by the voters, to take effect shortly after the election.

At the June 5, 1990 election, the resident voters overwhelmingly approved Malibu cityhood. On the same day, the Board filed a petition for writ of supersedeas to stay the May 11, 1990, judgment pending resolution of the appeal. On June 6, 1990, this court granted a stay "pending determination of the [supersedeas] petition or further order of this court." Due to the precedence given election matters (Code Civ. Proc., § 35), we ordered the appeal expedited.

CONTENTIONS

The Board contends the Act authorizes it, as the conducting authority, to fix the effective date of incorporation in its terms and conditions where no such date has been set by LAFCO.

DISCUSSION

1. *The statutory scheme.*

In 1985, the Legislature adopted the Act (§ 56000 et seq.), thus superseding the Knox-Nisbet Act (former § 54773 et seq.), the District Reorganization Act of 1965 (former § 56000 et seq.), and the Municipal Reorganization Act of 1977 (former § 35000 et seq.). (Stats. 1985, ch. 541, §§ 1-4, pp. 1920-2024.)

The Legislature's findings and declaration of purpose are found in section 56001, which states in relevant part: "[I]t is the policy of the state to

---

[3] Recordation of the certificate was expected to occur within several weeks of the June 5, 1990, election.

encourage orderly growth and development which are essential to the social, fiscal, and economic well-being of the state . . . . [T]he logical formation and determination of local agency boundaries is an important factor in promoting orderly development . . . . [¶] . . . [U]rban population densities and intensive residential, commercial, and industrial development necessitate a broad spectrum and high level of community services and controls . . . . [W]hen areas become urbanized to the extent that they need the full range of community services, priorities are required to be established regarding the type and levels of services that the residents of an urban community need and desire; . . . community service priorities are required to reflect local circumstances, conditions, and limited financial resources . . . . [A] single governmental agency, rather than several limited purpose agencies, is in many cases better able to assess and be accountable for community service needs and financial resources and, therefore, is the best mechanism for establishing community service priorities."

A local agency formation commission exists within each county. (§ 56325.) The role of such commission is to "review and approve or disapprove with or without amendment, wholly, partially, or conditionally, proposals for changes of organization or reorganization." (§ 56375, subd. (a).)[4] A commission's order giving approval to a change of organization may provide for, or be made subject to, specified terms and conditions, which terms and conditions may include an effective date for a change of organization. (§§ 56844, subd. (p), 57202, subd. (a).)

Upon the commission's approval of a change of organization, with or without conditions, the conducting authority conducts further proceedings on the proposal. (§ 57000.) If LAFCO's approval were subject to modifications or conditions, the conducting authority must comply with those modifications and conditions. (§ 57000, subd. (b).) At the hearing, the conducting authority receives any protests, objections or evidence on the proposal. (§ 57050, subd. (b).)

The conducting authority then adopts a resolution on the protests which may have been filed, and if the protests are not in the majority, the conducting authority, by resolution, orders the change of organization, subject to confirmation by the voters. (§ 57077, subd. (a).)

Following the election, the conducting authority adopts a resolution confirming the order of the change of organization if a majority of the votes are in favor of the proposal. (§§ 57175, 57176.) The conducting authority

---

[4] A " 'change of organization' " includes, inter alia, a city incorporation. (§ 56021, subd. (a).)

transmits the resolution to the executive officer of the commission, who executes a certificate of completion to be recorded with the county recorder. (§§ 57200, 57203.)

2. *Conducting authority has discretion to determine effective date of incorporation if LAFCO has not done so.*

a. *Key section 57202.*

The key statute is section 57202, which pertains to the effective date of a change of organization. It states: "(a) If an effective date is fixed in the terms and conditions or the resolution ordering or confirming the order of a change of organization or reorganization, that date shall be the effective date. [¶] An effective date shall not be fixed which is either of the following: [¶] (1) Earlier than the date of execution of the certificate of completion. [¶] (2) Later than one year after the date of execution of the certificate of completion. [¶] (b) The change of organization or reorganization shall be complete from the date of execution of the certificate of completion and effective from the dates specified in the terms and conditions of the resolution adopted by the conducting authority, unless no effective date has been fixed in those terms and conditions. [¶] (c) If no effective date has been fixed in any of the terms and conditions, the effective date of a change of organization or a reorganization shall be the date of the recordation made with the county recorder and, if filed with the recorder of more than one county, the date of the last such recordation." (§ 57202.)

b. *Principles of statutory construction and appellate review.*

■ In construing a statute, a court "look[s] first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, *to every word, phrase and sentence*. [Citation.]" (*Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.* (1989) 208 Cal.App.3d 753, 759 [256 Cal.Rptr. 590], italics added.) In addition, the statutory language must be considered in the context of the legislative purpose. (*Ibid.*) ■ The literal meaning of the words of an enactment may be disregarded only to avoid absurd results or to give effect to manifest purposes that appear from the statute's provisions considered as a whole. (*County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 849, fn. 6 [59 Cal.Rptr. 609, 428 P.2d 593].) ■ Further, a construction rendering statutory language surplusage is to be avoided. (*Brown* v. *Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].)

■ After the trial court acts, it is our role to make an independent determination on the interpretation of a statute, which is a question of law

for the reviewing court. (*California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 699 [170 Cal.Rptr. 817, 621 P.2d 856].) Pursuant to the standard rules of statutory interpretation, we analyze the controlling statutes.

 c. *Trial court's ruling violates standards.*

 The trial court struggled to interpret the ambiguously worded provisions of section 57202. It finally concluded only LAFCO's terms and conditions may specify the effective date, and the Board's resolutions merely may reiterate LAFCO's terms and conditions with or without an effective date set forth. Due to LAFCO's failure to specify an effective date, the default provision of section 57202, subdivision (c), became the exclusive alternative. To do so, the trial court had to engage in a partial rewrite of the statute. It speculated the first "or" in subdivision (a) of section 57202, was due to a typographical error, and replaced the "or" with "of" to arrive at its conclusion. By making that change, subdivision (a) would refer to the "effective date . . . fixed in the terms and conditions [*of*] the resolution ordering or confirming the order of a change of organization[.]" (Italics added.)

 However, the predecessor statutes to section 57202 refute the trial court's typographical error theory. Former section 35355, which was the forerunner to subdivision (a) of section 57202, provided: "If an effective date is fixed in the terms and conditions *or* the resolution ordering *or* confirming the order of incorporation, change of organization, or municipal reorganization, such date shall be the effective date." (Stats. 1977, ch. 1253, § 9, pp. 4728-4729, italics added.)

 Also, former section 35354, superseded by subdivision (c) of section 57202, stated: "If no effective date was fixed in *any* of the terms and conditions *or* in the resolution ordering *or* confirming the order of incorporation, or change of organization or municipal reorganization, the effective date is the date of the recordation with the county recorder pursuant to Section 35352." (Stats. 1977, ch. 1253, § 9, p. 4728, italics added.)

 Thus, the Legislature's use of the disjunctive in the predecessors to section 57202 calls into question the trial court's substituting "of" for "or" in subdivision (a) of section 57202. Irrespective of whether the Act generally is a continuation of, or a departure from, the earlier statutory scheme, with respect to section 57202, we must presume that when the Legislature used "or," it meant "or."

The trial court also was troubled that if the conducting authority were authorized to designate an effective date in its resolutions, there would be multiple and conflicting effective dates. This concern is unfounded as section 57000 requires the conducting authority to comply with LAFCO's terms and conditions. Thus, had LAFCO designated an effective date in its terms and conditions, the Board clearly would be bound thereby.

Further, as discussed below, a construction of section 57202 which prohibits the Board from setting an effective date impermissibly renders much of the statute surplusage.

### d. *MCI's argument in support of judgment unpersuasive.*

MCI does not utilize the trial court's "typographical error" analysis on appeal, and urges an alternative theory to preserve the judgment. MCI submits that section 57202 must be read to provide only LAFCO has the authority to designate an effective date in its terms and conditions. If LAFCO has fixed an effective date in its terms and conditions, such date must be adopted in the Board's resolutions. If LAFCO fails to specify an effective date, the default provision of section 57202, subdivision (c), is controlling. MCI argues it is "entirely inconsistent with the purposes and orderly administrative processes of the Act for the Board to be vested with this extraordinary power. [Fn. omitted.]"

MCI claims subdivision (a) of section 57202 mentions the conducting authority's resolutions only because those resolutions will reflect LAFCO's choice of an effective date in its terms and conditions. MCI rationalizes "[i]t is sensible to have the effective date fixed in one of the resolutions because these are the basic public records of incorporation elections" and thus are more accessible to the citizenry than LAFCO's terms and conditions.

MCI's public records argument is facile. If the Board is limited to reiterating LAFCO's effective date, the reference in subdivision (a) to an effective date in the Board's resolutions becomes surplusage.

Further, under such a narrow view of the Board's role, parts of subdivisions (b) and (c) also become surplusage. If only LAFCO's terms and conditions may set the effective date, the reference in subdivision (b) to the effective date in the terms and conditions "of the resolution adopted by the conducting authority" becomes redundant. (§ 57202, subd. (b).)

In addition, the use of the word "any" in subdivision (c) to modify terms and conditions further undermines a restrictive view of the Board's

function. (§ 57202, subd. (c).) Subdivision (c) does not state if no effective date has been fixed "in *the* terms and conditions"; it does not state "in *either* of the terms and conditions"; rather, it states "in *any* of the terms and conditions." If only LAFCO's terms and conditions may set an effective date, the wording would suffice if it were to state, "If no effective date has been fixed by the commission," or "If no effective date has been fixed in *the* terms and conditions." Proper and common usage of the term "any" in subdivision (c) indicates not only LAFCO, but also the conducting authority in its resolutions, may promulgate terms and conditions, at least with respect to the effective date of a change of organization.

Another problem with MCI's position is that it ascribes too much significance to the effective date setting procedure and it exaggerates the harm that would be done to the integrity of the statutory scheme were the Board able to set an effective date. The Board is limited in the selection of an effective date to within 12 months time of the date of execution of the certificate of completion (§ 57202, subd. (a)(2)). The Board could not delay a new city's existence for years on end.

In sum, MCI's position disregards the conducting authority's substantive powers under the Act, and, like the trial court's analysis, it impermissibly renders much of section 57202 surplusage. MCI's argument also fails to take into account that mandate is a continuing remedy if the Board conducts itself contrary to the Act. Further, the Board may not abuse its discretion under penalty of a reversal by the courts. (§ 56107.)[5]

e. *Independent determination on review establishes that conducting authority may set effective date.*

A reasonable interpretation of section 57202 giving credence "to every word, phrase and sentence" (*Fallbrook Sanitary Dist.* v. *San Diego Local Agency Formation Com.*, *supra*, 208 Cal.App.3d at p. 759), is that either LAFCO's or the conducting authority's terms and conditions may set the effective date.

Subdivision (a) of section 57202 discloses there are three possible sources for the setting of an effective date: (1) in the *terms and conditions* of a commission in its conditional approval of a proposal; or (2) in a conducting authority's preelection resolution ordering a change of organization, subject

---

[5] "Prejudicial abuse of discretion is established if the court finds that any determination of a commission or legislative body was not supported by substantial evidence in light of the whole record." (§ 56107.)

to confirmation by the voters; or (3) in a conducting authority's postelection resolution, confirming the order of the change of organization.

Subdivision (b) of the statute provides the incorporation "shall be . . . effective from the dates specified in the *terms and conditions of the resolution adopted by the conducting authority*, unless no effective date has been fixed *in those terms and conditions*." (§ 57202, subd. (b), italics added.)

Subdivision (c) thereof, the so-called default provision, provides if no effective date has been fixed "in *any of the terms and conditions*," the effective date shall be the date of recordation. (§ 57202, subd. (c), italics added.)

■ We are mindful of the well-established rule of construction that when a word or phrase has been given a particular scope or meaning in one part or portion of a law, it should be given the same scope and meaning in other parts or portions of the law. (*Stillwell* v. *State Bar* (1946) 29 Cal.2d 119, 123 [173 P.2d 313].) However, terms and conditions, as used in the Act, is not a term of art with a particularized legal meaning. (See *Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671, 682 [148 Cal.Rptr. 329, 582 P.2d 920] ["payor" not used in statute as term of art, referred to drawee or drawer].)

To the contrary, the glossary found at section 56011 et seq., at the beginning of the Act, sets forth over 70 terms and ascribes particular meanings to them. For example, the Act defines board of supervisors (§ 56020), city (§ 56023), commission (§ 56027), conducting authority (§ 56029), contiguous (§ 56031), include (§ 56042), incorporation (§ 56043), notice (§ 56058), registered voter (§ 56071), and so forth. If the Act were utilizing terms and conditions as a term of art to refer solely to LAFCO's terms and conditions, presumably it would have so specified. Rather than restricting the phrase terms and conditions to LAFCO, section 57202 appears to use the phrase slightly differently in each of its three subdivisions: in subdivision (a), to refer solely to LAFCO; in subdivision (b), to refer to the conducting authority; in subdivision (c), to LAFCO and to the conducting authority.

Our broad reading of terms and conditions is necessary to reconcile section 57202 with other portions of the Act which disclose that the conducting authority, as well as LAFCO, has discretion with respect to setting the effective date and in dealing with other matters.

Section 56844 states LAFCO's approval of a change of organization "*may* provide for, or be made subject to one or more of, the following terms

and conditions . . . . [¶] . . . [¶] (p) The fixing of the effective date of any change of organization, . . . " Thus, LAFCO has *discretion* to fix an effective date, *but is not required to do so.* Irrespective of the default provision in section 57202, subdivision (c), if LAFCO were the one and only body empowered to fix the effective date, the language of section 56844, subdivision (p), should be mandatory and resemble section 57082, which provides that a resolution ordering a change of organization *"shall* contain all of the following: . . . " (§ 57082, italics added.)

Construing section 56844 as allowing LAFCO to delegate the selection of an effective date to the Board also is consistent with section 57100. That section states that the conducting authority's resolution ordering incorporation subject to confirmation *"shall,* . . . , do all of the following: [¶] . . . [¶] (3) *Fix a date of election."* (§ 57100, italics added.) Because the election date is set by the conducting authority, not by LAFCO, the conducting authority is well positioned also to fix the effective date of the incorporation following an election within the limited time period allowed.

The conclusion that the Board may set the effective date finds further support in section 57082, which provides the resolution of the conducting authority shall contain "[a]ny other matters which the conducting authority deems material." (§ 57082, subd. (i).) Such matters could encompass the effective date of cityhood.

 Thus, a broad reading of terms and conditions, as that phrase is used in section 57202, comports with other provisions of the Act allowing the conducting authority to fix the election date and to address other matters which it "deems material."[6]

We understand MCI's theory that where LAFCO has not expressly fixed an effective date in its terms and conditions, LAFCO implicitly has invoked the default provision of section 57202, subdivision (c), and the conducting authority's resolutions likewise may fix this effective date as selected by LAFCO. The argument is sophistry. An implicit selection of a corrective mechanism is inherently contradictory.

Moreover, the law strongly favors important decisions being made on their merits rather than by default. This is reflected, inter alia, in the

---

[6] While MCI insists the conducting authority's role is purely ministerial and nonsubstantive, that argument also is undermined by other portions of the Act. For example, section 57053 allows the conducting authority to exclude any lands proposed to be formed into an improvement district, if the conducting authority finds those lands will not be benefited by becoming a part of the improvement district.

preference for trial on the merits over dismissal on procedural grounds (Code Civ. Proc., § 583.130), in the preference given to an interpretation of a will that prevents intestacy (Prob. Code, § 6160), and in the favor with which appellate courts look upon trial court orders setting aside defaults (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 525 [190 P.2d 593]).

Here, two entities have the power to hold hearings, evaluate the evidentiary material received, and presumably to make a reasoned decision on the selection of an appropriate effective date. An effective date for incorporation should be set after due deliberation by the entities endowed with the authority to render such a decision. The persons and governmental bodies affected are entitled to an exercise of such discretion in the first instance. A statutory corrective provision to fill the gap should be resorted to only when it is abundantly clear each of the responsible bodies has failed in its charge. Our interpretation upholds the authority of the Board as the conducting authority to set an effective date in the event LAFCO fails to do so.

As indicated, we are unpersuaded by MCI's dire prediction that allowing the conducting authority to fix the effective date will diminish LAFCO's role and thwart local self-rule. Had LAFCO designated an effective date, the Board would be bound thereby. Because LAFCO failed to specify an effective date in its terms and conditions, that task next devolved to the Board, and it is bound by a statutory time frame within which it must set such a date. (§ 57202, subd. (a)(2).) Inaction by the Board in turn would have triggered the default provision of section 57202, subdivision (c). Our analysis serves to give effect to the entire statutory scheme.

3. *Merits of Board's action not before us.*

MCI's petition for writ of mandate under Code of Civil Procedure section 1085 alleged the Board had failed to perform its ministerial duty by setting an effective date other than the recordation date. Thus, MCI does not attack the Board's selection of the March 28, 1991, effective date *on its merits,* and limits its challenge to the Board's lack of authority to do so in the first instance. Accordingly, we do not reach the merits of the Board's action.

CONCLUSION

After thorough scrutiny of the Act in light of the usual rules of statutory construction, we conclude the Act authorizes a conducting authority to fix an effective date in its terms and conditions if a local agency formation commission has not done so in the first instance.

If indeed our interpretation is not what the Legislature intended, the language of section 57202 needs clarification.

## DISPOSITION

The judgment is reversed with directions to enter judgment denying MCI's petition for writ of mandate. The stay is vacated and the petition for writ of supersedeas is denied.

Each party to bear respective costs on appeal.

Danielson, J., and Croskey, J., concurred.

Respondents' petition for review by the Supreme Court was denied October 11, 1990.