[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 744 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 745 
OPINION
Ronald Lesinski and Ruth Lesinski, objectors and appellants, appeal from an order granting the appointment of a provisional director to the board of ANNRHON, Inc., pursuant to Corporations Code section 308
On July 21, 1992, a hearing was held on the matter. On July 22, 1992, the court filed an order granting the petition and appointing Gene Deetz as the provisional director. On July 23, 1992, the notice of entry of judgment was filed. *Page 746 
On August 10, 1992, Ronald and Ruth Lesinski filed a timely notice of appeal.
 FACTS
In 1985, appellants Ronald and Ruth Lesinski incorporated ANNRHON. Appellants acquired from Wendy's International the franchises for three Wendy's restaurant locations. Two restaurants were built but they were not profitable and the corporate revenues were drained. Appellants did not have sufficient capital to proceed with the third location.
In order to retain their franchise rights, appellants sought additional investors to finance the third location. In 1986, ANNRHON entered into an agreement with Bruce and Ardeene Sanders (respondents), issuing them 20,000 shares of new stock for $50,000. Appellants also owned 20,000 shares of ANNRHON. The parties negotiated for two years regarding the manner in which to organize and operate ANNRHON, and agreed to an amendment to the articles of incorporation specifying close corporation status. On December 14, 1989, appellants and respondents entered into a shareholder's agreement stating that ANNRHON would be a close corporation.
The December 1989 shareholder's agreement states that appellants own 50 percent of outstanding ANNRHON stock, Bruce Sanders owns 25 percent, and Ardeene Sanders owns the remaining 25 percent. As to close corporation status, it states in paragraph "C" of the close corporation shareholder's agreement: "The Shareholders now wish to enter into this Agreement pursuant to Section 300(b) of the California Corporations Code for the purpose of providing for the management of the Corporation, including, but not limited to, the management of its business on a daily basis." The agreement states that the shareholders would employ appellants "for the purpose of furthering the business objectives" of the corporation. Appellants were granted an annual salary of $46,000, with specified cost of living adjustments, automobile expenses, and paid vacation. Respondents were to receive reasonable compensation for their time and effort on behalf of the corporation, including services for further site development and real estate acquisition and construction, provided that such expenditures receive prior approval from the shareholders.
In paragraph "1" of the agreement appellants and respondents waived all elections of the board of directors and appointed themselves as directors. It was further stated in that paragraph as follows: "These directors shall constitute the entire Board of Directors of ANNRHON. They shall perform *Page 747 
such mandatory duties, and only those duties, imposed on them by the California Corporations Code as Directors." The agreement named Ronald Lesinski as president, Bruce Sanders as vice-president, Ruth Lesinski as secretary and chief financial officer, and Bruce and Ardeene Sanders as assistant financial officers. Management of ANNRHON was set forth in paragraph 3 of the agreement as follows: "All management and administrative decisions and functions shall require either Shareholder approval or Shareholder action. The Shareholders shall periodically review the business operations of ANNRHON and shall be responsible for establishing the business policies of ANNRHON. Provided, however, that the Shareholders may by majority Shareholder consent delegate any such authority to an employee or agent of the Corporation. In this regard, the Shareholders delegate to the LESINSKIS the supervision of the day-to-day operations of ANNRHON." Each shareholder was granted one vote per share of capital stock. Shareholder meetings were scheduled to be held each quarter. Appellants were granted the responsibility to supervise the daily business operations of the Wendy's restaurants. The assets of the corporation were the three Wendy's restaurants (two in Fresno and one in Selma). The corporation was to operate the restaurants pursuant to the franchise rights granted to appellants by Wendy's International, but appellants individually own the franchise rights.
The agreement provides that a shareholder may transfer all or any part of his shares in the corporation to another person or entity only after first notifying the corporation and offering the shares for redemption. If the corporation fails to redeem the offered shares, the other shareholders have the right to purchase the shares within 30 days. If the shareholders do not purchase the shares, the shareholder may transfer the shares to any other person.
If the shareholders mutually decide to disassociate and dissolve the corporation, appellants have the first right to retain control of ANNRHON and have ANNRHON redeem all other shareholder shares. The parties agreed to submit any controversy regarding the construction or application of the agreement to arbitration. If any shareholder files a complaint for involuntary dissolution (Corp. Code, § 1800 et seq.), such action will be considered as an offer to voluntarily withdraw as a shareholder, and that shareholder must immediately dismiss the action.
The agreement provides for termination of its terms by (1) written agreement by the shareholders; (2) dissolution, bankruptcy or insolvency of ANNRHON; or (3) transfer of all of the outstanding stock to one of the shareholders. *Page 748 
The instant matter is the result of a petition filed by respondents on June 23, 1992, seeking appointment of a provisional director to the board of ANNRHON pursuant to Corporations Code section 308[1] The petition states that the directors are equally divided and cannot agree as to the management of ANNRHON affairs, and specifically lists 10 areas of alleged deadlock:
1. Respondents wished to develop additional restaurants but appellants have refused to agree;
2. At the March 13, 1992, shareholder's meeting, Bruce Sanders proposed the sale of the corporation to a specific prospective buyer and provided documentation concerning the offer. Respondents voted to sell; appellants voted not to sell or pursue the offer;
3. During the same meeting, Bruce Sanders moved to make the meetings monthly. Respondents voted to approve the motion; appellants voted against the motion;
4. Respondents wanted a meeting with appellants and the corporate bookkeeper to discuss financial matters, but appellants refused to attend;
5. Respondents wanted to pass on all cash generated by the corporation, other than that required for the reserve, to be distributed to the shareholders. Appellants wanted the cash to be held in the corporate bank account;
6. During the March 13, 1992, meeting, Bruce Sanders moved that he be allowed to attend all meetings between ANNRHON and Wendy's International. Respondents voted for the motion; appellants voted against it;
7. During the same meeting, Bruce Sanders moved that he be allowed access to the keys to the three restaurants. Appellants abstained from this vote;
8. Bruce Sanders arranged a meeting with the director of franchise sales for Wendy's International, but appellants refused to attend;
9. On June 5, 1992, Bruce Sanders delivered a letter to appellants proposing the appointment of a fifth director to be selected by mutual agreement. Appellants failed to respond to the letter; and
10. Respondents objected to the salary and inclusion of health insurance benefits in appellants' salary package. Appellants disagree, and continue to pay for health insurance benefits for themselves and their children. *Page 749 
Respondents argued these disputes created a need for appointment of a provisional director if the corporation was to continue to operate. It proposed the appointment of Gene Deetz, a certified public accountant, as an impartial person for the provisional directorship.
Appellants opposed the petition arguing that all the alleged deadlocked issues involved management and control matters expressly within the control of shareholder approval. They further argued that the shareholders had delegated daily operations to the control of appellants pursuant to section 300, subdivision (b). They also addressed each of the disputed issues.
As to the proposed sale of the corporation, appellants conceded that they had previously opposed the sale but stated that they were now ready to consider the proposed offer. The opposition cited to two letters which were attached as exhibits. The first letter was dated May 18, 1992, from Bruce Sanders to appellants, in which Sanders noted his pleasure that appellants were ready to consider the purchase offer. Bruce Sanders states that he was attaching the information of the purchase offer and urged appellants to quickly respond because several months had already passed from the date of the original offer. The letter stated: "Our position is very clear and has remained so throughout our many disagreements, regarding ownership and saleability of AnnRhon, Inc. We purchased one-half interest in three Wendy's restaurants and will expect one-half of the proceeds from the sale of those same restaurants. What you do with your franchise agreement is strictly between you and Wendy's International regarding future stores in other locations. [¶] Our difference of opinion on this point may have to be decided through further negotiation or legal interpretation, but must not be allowed to affect the impending sale of the restaurants. We, therefore, implore you not to use this as a negotiating tactic. To do so may jeopardize the potential sale and would not be in the best interest of the AnnRhon, Inc., Corporation, . . ." Bruce Sanders also requested an immediate meeting with appellants and representatives of Wendy's to facilitate the schedule, and requested a response from appellants by May 25, 1992.
The second letter is from Ruth Lesinski to the realtor mentioned in the purchase offer, Larry McKenry. This letter is not dated, but an accompanying declaration by Ruth Lesinski stated that it was mailed on June 22, 1992. This letter expressed regret that Bruce Sanders failed to inform the realtor of the stockholders' April 1992 decision to sell, and also stated that they were working with another party interested in purchasing the corporation. The letter additionally stated that appellants intended to sell their half of the corporation regardless of their dispute with respondents, and they would keep the realtor informed. Ruth Lesinski urged the realtor to have the *Page 750 
potential buyer seek approval by Wendy's to facilitate the possible sale. Ruth Lesinski stated that she never received a reply to this letter.
Respondents filed a reply to appellants' opposition. They disputed appellants' characterization of the shareholder's agreement and argued that it did not grant them broad powers to run the corporation. While the agreement appointed the shareholders as the permanent directors, it still provided for the board to perform the mandatory duties imposed by the Corporations Code. Respondents conceded that section 300, subdivision (b) permits a close corporation to transfer the board's duties to the shareholders, but argued that the shareholder's agreement only transferred the management powers to the shareholders. They noted that the board of directors maintained the mandatory duty to exercise all corporate powers as defined by section 300, subdivision (a).
At the hearing on the petition, respondents argued that the shareholder's agreement only delegated the board's management operations to the shareholders, but the board retained the ultimate control of the "corporate powers," citing section 207, subdivision (d), which specifically provides that the right to sell shares of the corporation is among the "corporate powers."
Appellants argued that section 207, subdivision (d) only addressed the sale of corporate stock rather than the shareholders' rights. They also argued that respondents refused to consider the terms of the shareholder's agreement delegating all the powers of the board to the shareholders as a close corporation pursuant to section 300, subdivision (b). Further, they argued, a provisional director would have no power over the corporation because he would not be a shareholder. As to the proposed sale, appellants stated that they were ready to sell their shares in recognition of the difficulties between the stockholders, and the expansion issue was thus moot.
The court granted the petition. Appellants requested specific findings as to the issues which were deadlocked to limit the expenses for the provisional director. The court declined and replied that "the war can continue from there and you may have to come back if — if there's something happening that your client doesn't like or that his client doesn't like, but at this point I am appointing the provisional director."
The court issued an order appointing Gene Deetz as the provisional director of ANNRHON, Inc., until such time as he resigns, or is removed by court order or a vote of the shareholders.
Appellants have appealed the appointment of the director, arguing that all of the alleged disputes involve matters that are solely within the power of the *Page 751 
shareholders pursuant to the shareholder's agreement, and that a provisional director could not break any deadlock since he would not be a shareholder. In the alternative, they request remand for the trial court to specify the "deadlocked" issues which the provisional director must address.
 DISCUSSION (1) An order to appoint a provisional director pursuant to section 308 is an appealable order. (See Edlund v. Los AltosBuilders (1951) 106 Cal.App.2d 350, 355 [235 P.2d 28]; DesertClub v. Superior Court (1950) 99 Cal.App.2d 346, 347 [221 P.2d 766].)
Section 308 provides that the superior court may appoint a provisional director when a deadlock exists on a corporate board of directors. It states in pertinent part: "(a) If a corporation has an even number of directors who are equally divided and cannot agree as to the management of its affairs, so that its business can no longer be conducted to advantage or so that there is danger that its property and business will be impaired or lost, the superior court of the proper county may, notwithstanding any provisions of the articles or bylaws and whether or not an action is pending for an involuntary winding up or dissolution of the corporation, appoint a provisional director pursuant to this section. Action for such appointment may be brought by any director or by the holders of not less than 33-1/3 percent of the voting power." The provisional director must be an impartial person who is neither a shareholder nor a creditor of the corporation, nor related to any other director or any judge of the court which is appointing the director. (§ 308, subd. (c).) "A provisional director shall have all the rights and powers of a director until the deadlock in the board or among shareholders is broken or until such provisional director is removed by order of the court or by approval of the outstanding shares. . . ." (§ 308, subd. (c).)
(2a) The provisional director thus acts as a "tie-breaker" when a deadlock exists between an even number of directors. The provisional director does not have discretionary power to override a decision of the board and does not take over ultimate management from the owners. (See Lew, The Custodian Remedy forDeadlocks in Close Corporations (1980) 13 U.C. Davis L.Rev. 498, 514.)
(3a) A clear reading of section 308 indicates that the superior court "may . . . appoint a provisional director." This gives the superior court the discretion to grant or deny the petition. (4) Discretionary trial court rulings are reviewed under the "abuse of discretion" standard. "Under the `abuse of discretion' standard of review, appellate courts will disturb discretionary trial court rulings only upon a showing of a `clear case of abuse' *Page 752 
and `a miscarriage of justice.'" (Hernandez v. Superior Court
(1992) 9 Cal.App.4th 1183, 1190 [12 Cal.Rptr. 55], quotingBlank v. Kirwan (1985) 39 Cal.3d 311, 331 [216 Cal.Rptr. 718,703 P.2d 58].)
(3b) The "abuse of discretion" standard in section 308 cases is supported by In re Jamison Steel Corp. (1958) 158 Cal.App.2d 27
[322 P.2d 246]. In making its decision, the appellate court determined that the evidence before the trial court was sufficient to support its findings. Appellants must establish an abuse of discretion.
In Jamison, the corporation's board consisted of four directors who were deadlocked over the issuance of a dividend and the election of officers. (158 Cal.App.2d at pp. 31-32.) The proponents of the new officers and the dividend filed a petition in the superior court to appoint a provisional director pursuant to section 819, the predecessor to the current section 308[2]
The superior court granted the motion and appointed a provisional director.
(5) The opponents of the petition argued that the appointment of a provisional director was analogous to the appointment of a receiver, and such an appointment could not be made without a showing that (1) the directors cannot agree on management of the corporation and (2) as a result of the disagreement the business cannot be conducted to advantage or there is a danger that its property and business will be impaired and lost. (158 Cal.App.2d at p. 35.) The court rejected any comparison of the provisional director to a receiver: "The appointment of a receiver is a more heroic remedy than that provided under the Corporations Code . . ., since a receiver takes possession of all corporate property and assets and exercises complete control over all the affairs of the corporation including the management of its everyday business. The provisional director provided [by statute] is merely a director who is entitled to notice of board meetings and may vote at such meetings until an existing deadlock of the board is broken or until he is removed by court order or by vote or written consent of the holders of a majority of the voting shares. He is merely a director and has none of the plenary powers which are granted to a receiver." (158 Cal.App.2d at p. 35.) The appointment of a provisional director is "merely a method of resolving disagreements between directors when there are an even number of directors on a board." (158 Cal.App.2d at pp. 35-36.) The statutory remedy is available in situations "which have not yet reached the point that a receiver should or could be appointed." (Id. at p. 36.) "It is a less *Page 753 
severe remedy which is available to protect the rights of the parties and does not reflect upon the financial standing or good name of the corporation nor does it take the property out of the hands of the owners or the persons actually administering its business. There is a readily discernible difference between a corporation not able to conduct its business to advantage or being in danger of impairing and losing its property and a corporation which is in danger of cessation or diminution of operations. The facts recited in this opinion may well be taken as a model for the facts which will justify the invoking of the remedy provided [by statute]." (158 Cal.App.2d at p. 36.)
The opponents in Jamison argued that the subsequent declaration of a dividend and the retention of the incumbent officers by tie vote did not impair the operation of the business. The court rejected this claim because perpetuation of incumbent officers was not a healthy situation. "We do not feel that perpetuation of existing policies or incumbent officers in office can be construed as effectively managing corporate affairs." (158 Cal.App.2d at p. 37.) As for the other matters, the court found sufficient disagreement in the record as to salary payments that might impair the corporate property to justify the appointment of the director. "Where the two principal stockholders of a corporation are dissatisfied with the method of payment of its principal employee that appears to be a matter of interest and importance to the corporation." (Id. at p. 38.)
The opponents' arguments on the doctrine of estoppel or unclean hands were rejected by the court. (6) "The question before the court is whether there is a deadlock and not why such deadlock may exist. To place upon a court the burden of determining one's reason for voting on certain matters would be to impose a burden that would be almost impossible of fulfillment." (158 Cal.App.2d at p. 39.)
(2b) The opponents' final argument was that the provisional director could not have uncontrolled authority or broad powers to vote on crucial issues such as amending the articles of incorporation. "This position, however, assumes that the provisional director will not conscientiously and fairly perform his duties as a court-appointed officer, . . ." (158 Cal.App.2d at p. 40.) The statutory language grants the provisional director all the rights and powers of a director and the right to vote at board meetings until the deadlock is broken or he is removed by the court or the shareholders. The statute "makes it patent that the Legislature intended to grant the provisional director all of the powers ordinarily exercised by other directors. Furthermore, it is within reasonable possibility that the provisional director may well feel that the business of the corporation does not require an uneven *Page 754 
number of directors, but that the differences between the parties may be adjusted." (Ibid.)
(7) The situation with ANNRHON supports the appointment of the provisional director. The parties are deadlocked on whether to expand the business or, in the alternative, sell out. The moving documents reflect the degree of dissension that has prevented any movement on any of the disputed issues. As inJamison, the deadlock has resulted in perpetuation of existing policies and dissatisfaction on the part of principal stockholders. Appellants' dispute over the veracity of some of the deadlocked issues does not require this court to review the reasons for the deadlock, but instead reflects the divisiveness within the corporation necessitating the appointment of the provisional director.
(8) Appellants argue that the superior court should have specified the deadlocked issues on which the provisional director may vote. Jamison, however, clearly stated that the provisional director has the powers of a director and the right to vote at board meetings until the deadlock is resolved or he is removed by the court or shareholders. It was not necessary for the superior court to have listed the issues upon which the provisional director could vote.
(9) A more vexing issue involves the existing shareholder's agreement and the effect of that agreement on the deadlock and the appointment of a director. Appellants argue that the December 1989 shareholder's agreement shifted the powers of the board to the shareholders, and that a provisional director cannot vote on any of the disputed issues because they are matters completely within the power and control of the shareholders. They contend that section 308 only permits appointment of a provisional director, and such an individual does not have any rights as a shareholder and thus lacks any power to break the tie votes.
The shareholder's agreement was executed pursuant to section 300, subdivision (b), which permits the transfer of the board's powers to the shareholders of a close corporation. It provides, in pertinent part: "(b) Notwithstanding subdivision (a) or any other provision of this division, but subject to subdivision (c), no shareholders' agreement, which relates to any phase of the affairs of a close corporation, including but not limited to management of its business, division of its profits or distribution of its assets on liquidation, shall be invalid as between the parties thereto on the ground that it so relates to the conduct of the affairs of the corporation as to interfere with the discretion of the board or that it is an attempt to treat the corporation as if it *Page 755 
were a partnership or to arrange their relationships in a manner that would be appropriate only between partners. . . . An agreement made pursuant to this subdivision shall terminate when the corporation ceases to be a close corporation, except that if the agreement so provides it shall continue to the extent it is enforceable apart from this subdivision. . . ." Section 300, subdivision (e) permits a close corporation's shareholder's agreement to dispense with the formalities of directors' and shareholders' meetings. Section 300, subdivision (c), however, prohibits altering or waiving certain statutory prerequisites for commencement or termination of close corporation status (§ 158); the requirements of disclosures on share certificates (§§ 417, 418); distributions to shareholders (§§ 500, 501); shareholder consent to merger or reorganization (§§ 1111, 1201, subd. (e)); corporate records and reports (§ 1500 et seq.); inspection rights (§ 1600 et seq.); involuntary dissolution (§ 1800 et seq.); or penalties (§ 2200 et seq.). (See 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 40, pp. 549-550.)
Appellants contend that every dispute cited by respondents involves issues of management and control that the shareholder's agreement expressly placed within the control of the shareholders rather than the directors. Indeed, some of Bruce Sanders's complaints, such as obtaining a set of keys to the restaurants, appear to fall within the daily management and control of the operation.
Respondents point to section 300, subdivision (a), and contend that the shareholder's agreement did not transfer all board powers to the shareholders. Section 300, subdivision (a) states: ". . . [T]he business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board. The board may delegate the management of the day-to-day operation of the business of the corporation to a management company or other person provided that the business and affairs of the corporation shall be managed and all corporate powers shall be exercised under the ultimate direction of the board." Respondents contend that subdivision (a) vests the corporate board of directors with two basic powers: (1) management of the business and the affairs of the corporation, and (2) exercise of all corporate powers. The instant shareholder's agreement only transferred management and control to the shareholders, and the ANNRHON board thus retained the right to exercise "all corporate powers" pursuant to section 300, subdivision (a). Respondents contend that decisions involving the ultimate direction of the corporation, such as whether to expand or sell out, involve the exercise of the "corporate powers" beyond that of normal management and control and thus are still retained by the ANNRHON board. *Page 756 
A close examination of the shareholder's agreement supports respondents' argument. The agreement was expressly executed pursuant to section 300, subdivision (b) "for the purpose of providing for the management of the Corporation, including, but not limited to, the management of its business on a daily basis." (Italics added.) All "management and administrative decisionsand functions" required shareholder approval, and appellants were granted the power to supervise daily operations. (Italics added.) The board expressly retained "such mandatory duties, and only those duties, imposed on them by the California Corporations Code as Directors." The retention of such mandatory duties obviously refers to the limitations imposed by section 300, subdivision (c), but can also be interpreted to include the "exercise of corporate powers" as provided for in section 300, subdivision (a). Therefore, we find that the shareholder's agreement did not entirely divest the board of all powers over ANNRHON, Inc.
The remaining question is whether the disputed issues involve the exercise of corporate powers placed within the board, or management and administrative decisions and functions placed within the shareholders. The court finds that decisions as to the future direction and operation of the corporation implicate the exercise of corporate powers that are within the control of the board. The shareholder's agreement, by its terms, limited the shareholders' power to daily management and administrative decisions.
The shareholder's agreement permits the individual stockholders to sell their shares to third parties provided they initially offer such shares to the corporation for redemption. Respondents could have sold their shares at any time. The proposed purchase offer was for the three Wendy's restaurants rather than the individual shares. The record reveals that the purchase offer tendered by the realtor was not directed at the individual shares of the corporation, but at the three restaurants which constituted the corporate assets. The decision to sell or convey corporation property constitutes the exercise of corporate power and, as such, is thus vested in the board. The individual shareholders have no power as such to sell or authorize the sale of corporate property. (See Gashwiler v. Willis (1867)33 Cal. 11, 19.)
The record established that a deadlock existed within ANNRHON, Inc., such that the appointment of a provisional director pursuant to section 308 was proper. The provisional director will have the power to vote on those issues involving the board's retained ability to exercise the corporate powers. *Page 757 
 DISPOSITION
The appointment of a provisional director pursuant to California Corporations Code section 308 is affirmed. Costs to respondents.
Stone (W.A.), Acting P.J., and Vartabedian, J., concurred.
A petition for a rehearing was denied August 26, 1993.
[1] All statutory references are to the Corporations Code unless otherwise indicated.
[2] The pertinent provisions of section 819 are identical to the current section 308 (See In re Jamison Steel Corp., supra,
158 Cal.App.2d at p. 34.) Section 819 was repealed in 1975 and replaced by the current version of section 308 *Page 758