[No. B075384. Second Dist., Div. Three. Mar. 31, 1995.]

AXEL BELIO, Plaintiff and Appellant, v.
PANORAMA OPTICS, INC., Defendant and Respondent.

**COUNSEL**

Rosen & Loeb and Alan L. Rosen for Plaintiff and Appellant.

Mihaly, Schuyler & Mitchell, Zoltan Mihaly, Stephen Mihaly and William R. Hess for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Axel Belio (Belio) appeals a judgment following a grant of summary adjudication in favor of defendant and respondent Panorama Optics, Inc. (Panorama).

The issue presented is whether Panorama properly negated Belio's action for involuntary dissolution of the corporation.

We conclude Belio is not entitled to involuntary dissolution pursuant to Corporations Code section 1800, subdivision (b)(3).[1] That provision requires both internal dissension and shareholder deadlock. Here, while there is internal dissension, there is no shareholder deadlock because the sole other

---

[1]All further statutory references are to the Corporations Code, unless otherwise specified.

shareholder owns 54 percent of the shares and there was no showing that a simple majority vote is insufficient for the corporation to conduct its business.

However, the issue of whether Belio is entitled to involuntary dissolution on the ground it is reasonably necessary to protect his interest (§ 1800, subd. (b)(5)) remains to be determined. The judgment therefore is reversed.

## Factual and Procedural Background

On May 22, 1991, Belio filed an operative first amended complaint against Panorama, as well as his brother Larry Belio (Larry),[2] Richard Thomas and Vicki Howard in their individual capacities and as officers of Panorama.

In the first cause of action, Belio alleged he owned 46 percent of the stock of Panorama, a close corporation,[3] there was internal dissension between Panorama's two shareholders and they were deadlocked. (§ 1800, subd. (b)(3).) Further, Panorama had two shareholders and liquidation was "reasonably necessary" for Belio's protection. (§ 1800, subd. (b)(5).) On these two grounds, Belio requested the involuntary dissolution of Panorama.[4]

In the second cause of action, Belio pled pursuant to the dissolution of the corporation, he desired to receive his share of the ownership interest and requested an accounting.

Lastly, Belio's third cause of action sought an order directing defendants to maintain the financial status quo of Panorama and not deplete the corporate assets.

On November 10, 1992, Panorama filed a motion for summary adjudication of issues. Panorama asserted Belio's complaint sought dissolution under both subdivision (b)(3) and subdivision (b)(5) of section 1800, but that its "motion concern[ed] [*only*] *the first ground*[,]" i.e., under subdivision (b)(3). (Italics added.) Panorama contended the shareholders were not so deadlocked that the business could not be conducted to the advantage of the

---

[2]We refer to Belio's brother by his first name for purposes of clarity and not out of disrespect. (See *In re Marriage of Olsen* (1994) 24 Cal.App.4th 1702, 1704, fn. 1 [30 Cal.Rptr.2d 306].

[3]A close corporation is a corporation whose articles of incorporation, in addition to other required matters, contain a provision that all of the corporation's issued shares of all classes shall be held of record by not more than a specified number of persons, not exceeding 35, and a statement " 'This corporation is a close corporation.' " (§ 158, subd. (a).)

[4]Section 1800, subdivision (b), sets forth the grounds for involuntary corporate dissolution. Those grounds include: "(3) There is internal dissension and two or more factions of shareholders in the corporation are so deadlocked that its business can no longer be conducted with advantage to its shareholders . . . . [¶] . . . [¶] (5) In the case of any corporation with 35 or fewer shareholders . . . , liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders."

shareholders. Deadlock could not exist because Larry held a controlling 54 percent interest in Panorama. Further, Belio had made no showing of a substantial disagreement concerning the management and operation of Panorama.

Larry's declaration in support of Panorama's motion stated he was a 54 percent owner of Panorama and that he had no problems with any of the employees concerning the management and direction of Panorama.

Responding to Panorama's limited motion, Belio contended Panorama was not entitled to summary adjudication on his claim under section 1800, subdivision (b)(3), because internal dissension existed at Panorama. Further, the mere fact Larry owned a majority of Panorama's stock was not determinative of the issue of deadlock.

Belio's opposing declaration stated he and Larry held completely different views as to the operation of Panorama, Larry had instructed Panorama's employees to disregard Belio's instructions, and the two had been involved in a physical altercation at work.

The matter was heard on December 15, 1992. The order granting summary adjudication was filed January 8, 1993. Even though Panorama solely had sought summary adjudication as to Belio's claim for dissolution under subdivision (b)(3) of section 1800, and not as to subdivision (b)(5), the trial court granted summary adjudication as to the first cause of action for involuntary dissolution in its entirety.

The trial court ruled: It was undisputed Larry was a 54 percent shareholder in Panorama. Case law required a sufficient showing of substantial disagreement as to the operation and management of the corporation in order to give rise to the section 1800 criteria. The evidence presented by Belio in opposition to the motion contained "mostly conclusory statements and is not sufficient to raise a triable issue of material fact as to such disagreement between . . . Belio and [Panorama]."

On January 20, 1993, Belio filed a motion for reconsideration. Belio argued his complaint for dissolution was authorized under both subdivisions (b)(3) and (b)(5) of section 1800 and that Panorama's motion specifically addressed itself only to subdivision (b)(3). Because no motion was made on the second ground, nor was any evidence submitted on that issue, the trial court had erred in dismissing the first cause of action in its entirety.

On March 29, 1993, the trial court denied reconsideration.

On April 15, 1993, Belio filed notice of appeal from the grant of the motion for summary adjudication and the denial of the motion for reconsideration.

## CONTENTIONS

Summarizing Belio's contentions, he avers the trial court erred in granting summary adjudication as to the entire first cause of action because Panorama's motion was not directed at his claim for dissolution under section 1800, subdivision (b)(5), and triable issues exist which preclude summary adjudication of the claim under section 1800, subdivision (b)(3).

Panorama contends the appeal violates the one final judgment rule and must be dismissed, and in any event, the trial court's ruling was proper.

## DISCUSSION

1. *The order is appealable as a final judgment.*

Panorama contends the appeal is improper because the order granting summary adjudication had disposed of only one of the three causes of action which were pled in the complaint. Contemplating further proceedings, the trial court specifically directed its summary adjudication as to the first cause of action to be "carried into any final judgment subsequently entered in this proceeding." No such final judgment has been entered and will not be entered until the trial of the two remaining causes of action. Thus, the order appealed from does not dispose of all the causes of action alleged in Belio's complaint.

We conclude the appeal is proper because the trial court's order granting summary adjudication as to the first cause of action "effectively disposed of the case." (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 9 [270 Cal.Rptr. 796, 793 P.2d 2].)

In "determining whether a particular decree is essentially interlocutory and nonappealable, or whether it is final and appealable . . . [i]t is not the form of the decree but the substance and effect of the adjudication which is determinative. As a general test, which must be adapted to the particular circumstances of the individual case, it may be said that where no issue is left for future consideration except the fact of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory."

(*Lyon* v. *Goss* (1942) 19 Cal.2d 659, 669-670 [123 P.2d 11]; accord *Eldridge* v. *Burns* (1978) 76 Cal.App.3d 396, 404 [142 Cal.Rptr. 845]; see 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 67-68, pp. 91-93.) In *California Assn. of Psychology Providers*, a summary judgment solely as to the seventh cause of action effectively disposed of the entire case, and resulted in an appealable judgment. (*California Assn. of Psychology Providers* v. *Rank*, *supra*, 51 Cal.3d at p. 9.)

Here, as Belio argues, the second and third causes of action were purely ancillary to the first cause of action. In the second cause of action, Belio pled upon dissolution of the corporation, he desired to receive his share of the ownership interest and requested an accounting. The accounting claim became moot when dissolution was disallowed in that the corporate assets will not be distributed to the parties. Belio's third cause of action sought an order directing defendants to maintain the financial status quo of Panorama during the pendency of the action. This claim likewise became moot once Belio was precluded from dissolving the corporation. Thus, as in *Eldridge* "there was nothing further in the nature of judicial action on the part of the court essential to a final determination of the asserted rights of the respective parties." (*Eldridge* v. *Burns*, *supra*, 76 Cal.App.3d at p. 405.)

Accordingly, we construe the appeal from the order granting summary adjudication to be an appeal from a final judgment and the matter is properly before this court.

2. *Grant of summary adjudication as to first cause of action was error.*

a. *Panorama's motion was defective because it was not directed at the entire first cause of action.*

■ At the relevant time in 1992, Code of Civil Procedure section 437c authorized a motion for summary adjudication "[i]f it is contended that *one or more causes of action* within an action has no merit[.]" (Code Civ. Proc., § 437c, subd. (f), italics added.) Consistent therewith, the statute currently provides: "A motion for summary adjudication shall be granted only if it *completely disposes of a cause of action*[.]" (Code Civ. Proc., § 437c, subd. (f)(1), italics added.)

Panorama's motion was not directed at the first cause of action in its entirety. Panorama solely sought summary adjudication of one issue within the first cause of action, namely, that Belio's request for dissolution under section 1800, subdivision (b)(3), was without merit. Panorama's papers expressly declined to address Belio's alternative section 1800, subdivision (b)(5), ground.

Because Panorama merely sought summary adjudication as to a single issue within a cause of action, rather than as to an entire cause of action, the motion was procedurally infirm and should have been denied.

b. *Trial court further erred in disposing of entire first cause of action because section 1800, subdivision (b)(5), ground was not before it.*

As indicated, although Belio's first cause of action sought dissolution pursuant to two discrete grounds, Panorama's motion expressly was limited to the section 1800, subdivision (b)(3), ground. Thus, the issue of Belio's claimed entitlement to dissolution pursuant to section 1800, subdivision (b)(5), was not before the trial court. Therefore, the overbroad grant of summary adjudication as to the entire first cause of action was error and must be reversed.

3. *Trial court properly held Belio not entitled to dissolution under section 1800, subdivision (b)(3).*

a. *Section 1800, subdivision (b)(3), requires shareholder deadlock, not merely dissension.*

To guide the trial court on remand (Code Civ. Proc., § 43),[5] we address whether Belio may obtain dissolution under section 1800, subdivision (b)(3). That provision authorizes involuntary dissolution where "[t]here is internal dissension *and* two or more factions of shareholders in the corporation are so deadlocked that its business can no longer be conducted with advantage to its shareholders[.]" (§ 1800, subd. (b)(3), italics added.)

The requirements are in the conjunctive and therefore both internal dissension and deadlock must exist to establish a basis for dissolution. (*Buss* v. *J. O. Martin Co.* (1966) 241 Cal.App.2d 123, 135-136 [50 Cal.Rptr. 206]; *Fuimaono* v. *Samoan Congregational etc. Church of Oceanside* (1977) 66 Cal.App.3d 80, 84 [135 Cal.Rptr. 799].)

The statute fails to define the term "deadlock" as utilized therein. Consequently, we have taken judicial notice of the legislative history of section 1800, subdivision (b)(3)'s predecessor, Civil Code section 404, which was enacted in 1931.[6] (Evid. Code, §§ 452, 459; *Commodore Home Systems, Inc.*

---

[5]Code of Civil Procedure section 43 provides in relevant part: "The Supreme Court and the courts of appeal, may affirm, reverse or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had. *In giving its decision, if a new trial be granted, the court shall pass upon and determine all the questions of law involved in the case, presented upon such appeal, and necessary to the final determination of the case.*" (Italics added.)

[6]The relevant provision pertaining to internal dissension and shareholder deadlock was adopted in Civil Code section 404, subdivision (2) (Stats. 1931, ch. 862, § 2, p. 1829), recodified in Corporations Code section 4651, subdivision (d) (Stats. 1947, ch. 1038, p. 2388), and again recodified in Corporations Code section 1800, subdivision (b)(3) (Stats. 1975, ch. 682, § 7, p. 1597).

v. *Superior Court* (1982) 32 Cal.3d 211, 218, fn. 9 [185 Cal.Rptr. 270, 649 P.2d 912].) However, that area of inquiry has not shed any light on the statute's meaning of the term.

Webster's Third New International Dictionary (1986 uabridged), at page 580, defines deadlock as, inter alia, "a state of inaction or of neutralization caused by the opposition of persons or of factions (as in a . . . voting body): STANDSTILL."

A standstill is what is contemplated by section 308, which is another provision pertaining to deadlock. Section 308 provides the superior court may appoint a provisional director when a deadlock exists on a corporate board of directors. (*In re ANNRHON, Inc.* (1993) 17 Cal.App.4th 742, 751 [21 Cal.Rptr.2d 599].) A deadlock exists when the board has an even number of directors who are equally divided and cannot agree as to the management of its affairs. (§ 308, subd. (a).) "The provisional director thus acts as a 'tie-breaker' when a deadlock exists between an even number of directors." (*In re ANNRHON, Inc., supra,* 17 Cal.App.4th at p. 751.) Deadlock may also exist with an uneven number of directors when the shareholders are incapable of electing a successor board. (§ 308, subd. (b).)

■ Shareholders, like directors, may be deadlocked in a variety of situations. There may be two shareholders or two factions of shareholders, each of whom owns 50 percent of the corporation's shares. (See *Anmaco, Inc.* v. *Bohlken* (1993) 13 Cal.App.4th 891, 898 [16 Cal.Rptr.2d 675].) A deadlock may occur in a close corporation even if one faction holds a majority of the shares if provision has been made for super-majority or unanimous voting on important matters. (1 Ballantine & Sterling, Cal. Corporation Laws (4th ed. 1993) § 65.01, p. 4-114.1.) Deadlock can also develop if there are three or more warring camps, none of which will join together to form a majority coalition. (1 Ballantine & Sterling, Cal. Corporation Laws, *supra,* § 65.01, p. 4-114.2.)

While section 1800, subdivision (b)(3), requires both internal dissension and shareholder deadlock, there is little discussion in case law of the latter element.

Although *Buss* acknowledged the instant provision has two elements (*Buss* v. *J.O. Martin Co., supra,* 241 Cal.App.2d at pp. 135-136), its analysis did not give due consideration to the requirement of deadlock. *Buss* stated: "While the factual element of internal dissension clearly appears, the

complaint is not as explicit in pleading the element of 'deadlock.' However, it does allege that plaintiffs and defendant . . . hold contrary and opposing views on nearly all phases of the conduct of the business and that 'all attempts at discussing the same between these plaintiffs and [defendant] end in no useful purpose and invoke constant bitterness, quarrelling and mutual disapproval.' [Italics deleted.] Liberally construed . . . the allegations plead both elements of [dissension and deadlock] and that as against a general demurrer they constitute a sufficient showing under said subdivision." (*Buss v. J. O. Martin Co., supra,* 241 Cal.App.2d at p. 136.)

Thus, despite *Buss*'s recognition that both dissension and deadlock are required, it appears the court focused exclusively on internal dissension and did not treat shareholder deadlock as a separate and distinct essential element.

Similarly, *Fuimaono* recognized that both internal dissension and shareholder deadlock must be shown. (*Fuimaono v. Samoan Congregational etc. Church of Oceanside, supra,* 66 Cal.App.3d at p. 84.) In that case, which involved the involuntary dissolution of a nonprofit religious corporation, the reviewing court found both elements were satisfied. (*Ibid.*) However, in reviewing the sufficiency of the evidence, *Fuimaono*'s discussion emphasized the dissension and discord within the church. Nonetheless, at least inferentially, the court also found the two factions within the church membership were so deadlocked the church could no longer conduct its business to the advantage of its members. (*Id.,* at pp. 83-85.)

We now advert to the facts of the instant case.

b. *No showing of shareholder deadlock to warrant involuntary dissolution under section 1800, subdivision (b)(3).*

Belio's opposing declaration revealed internal dissension at Panorama. As indicated, Belio stated he and his brother, Larry, held completely different views as to the operation of Panorama, Larry had instructed Panorama's employees to disregard Belio's instructions, and the two had been involved in a physical altercation at work.

However, there is no triable issue as to the essential element of shareholder deadlock.

As indicated, it is undisputed that Larry holds 54 percent of Panorama's stock. Further, there was no showing by Belio that the parties had made

provision for super-majority or unanimous voting on certain important matters. (1 Ballantine & Sterling, Cal. Corporation Laws, *supra*, § 65.01, p. 4-114.1.)

Consequently, given Larry's 54 percent ownership of Panorama's stock, the undisputed evidence established there was no shareholder deadlock. Therefore, Belio cannot obtain dissolution under section 1800, subdivision (b)(3).[7]

4. *Applicability of section 1800, subdivision (b)(5) ground remains to be determined.*

Merely because there is no shareholder deadlock does not mean Belio is without a remedy. Another alternative is section 1800, subdivision (b)(5), which authorizes the involuntary dissolution of corporations with 35 or fewer shareholders on the ground "liquidation is reasonably necessary for the protection of the rights or interests of the complaining shareholder or shareholders."

Belio pled section 1800, subdivision (b)(5), in his complaint as another basis for involuntary dissolution. However, said ground for dissolution was not addressed below by Panorama in its motion for summary adjudication, and therefore was not before the trial court, and consequently is not properly before this court. Whether Belio is entitled to involuntary dissolution pursuant to said subdivision remains to be addressed by the parties at the trial court level in the first instance.

---

[7]Our analysis may seem hypertechnical, particularly in view of prior case law on the subject. However, it seems that any different interpretation is a matter for the Legislature, not this court. We do nothing more than apply the fundamental canon of statutory interpretation to "give meaning to every word and phrase in the statute to accomplish a result consistent with the legislative purpose, . . ." (*Harris* v. *Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1159 [278 Cal.Rptr. 614, 805 P.2d 873]; accord *Heller* v. *Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 39 [32 Cal.Rptr.2d 200, 876 P.2d 999].) We recognize where there is dissension of the magnitude expressed in the facts of the cases we cite and in the instant case, it surely follows the corporate entity is nonfunctional for practical purposes, irrespective of a lack of shareholder deadlock within the meaning of the statute. Nonetheless, the Legislature has determined that mere dissension is not enough; there must also be shareholder deadlock to obtain involuntary dissolution under section 1800, subdivision (b)(3). Presumably, the rationale of the Legislature was to ensure the integrity of the corporate entity and to preclude dissolution without an adequate showing. If our interpretation is not what the Legislature intended, the statute requires clarification. (See *Malibu Committee for Incorporation* v. *Board of Supervisors* (1990) 222 Cal.App.3d 397, 410 [271 Cal.Rptr. 505]; *Mir* v. *Charter Suburban Hospital* (1994) 27 Cal.App.4th 1471, 1487, fn. 7 [33 Cal.Rptr.2d 243].)

## DISPOSITION

The judgment is reversed. Belio to recover costs on appeal.

Kitching, J., and Aldrich, J., concurred.

On March 25, 1995, the opinion was modified to read as printed above.